**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

WILLIE LEE ALSTON,

*Defendant-Appellant.*

No. 09-4375

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Andre M. Davis, District Judge.
(1:08-cr-00305-AMD-1)

Argued: March 25, 2010

Decided: July 2, 2010

Before NIEMEYER and KING, Circuit Judges, and
Eugene E. SILER, Jr., Senior Circuit Judge of the United
States Court of Appeals for the Sixth Circuit,
sitting by designation.

Vacated and remanded by published opinion. Judge Niemeyer
wrote the opinion, in which Judge King and Senior Judge
Siler joined.

**OPINION**

**ARGUED:** Meghan Suzanne Skelton, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Greenbelt, Maryland, for Appellant. George Jarrod Hazel, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee. **ON BRIEF**: James Wyda, Federal Public Defender, Baltimore, Maryland, for Appellant. Rod J. Rosenstein, United States Attorney, Baltimore, Maryland, for Appellee.

---

**OPINION**

NIEMEYER, Circuit Judge:

This appeal presents the question of whether Willie Alston's sentence for possession of a firearm in violation of 18 U.S.C. § 922(g)(1) was properly enhanced under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), which provides for an enhancement based on a defendant having three prior convictions for a violent felony or a serious drug offense. In enhancing Alston's sentence, the district court relied on a prior conviction resulting from Alston's *Alford** plea to a Maryland charge for second-degree assault. Under Maryland law, the second-degree assault offense includes several different generic crimes, some of which are violent felonies and some of which are not. *See United States v. Coleman*, 158 F.3d 199, 202 (4th Cir. 1998) (en banc); *see also Cruz v. State*, 963 A.2d 1184, 1188 n.3 (Md. 2009). To demonstrate that Alston's conviction was for a violent felony, the government submitted the transcript of Alston's *Alford* plea proceeding, which showed that the state prosecutor's proffer of the facts that the State would have presented at trial indicated that

---

*North Carolina v. Alford*, 400 U.S. 25 (1970) (authorizing a defendant to waive trial and to consent to punishment without admitting participation in the acts constituting the crime).

Alston had committed a violent felony, but also that Alston never agreed to those facts.

Because Alston's *Alford* plea to second-degree assault did not *necessarily* rest on facts establishing his participation in a type of assault that qualifies as a violent felony, *see Shepard v. United States*, 544 U.S. 13, 20-21, 24 (2005), in that (1) he admitted to no such facts and (2) such facts are not inherent in a Maryland conviction for second-degree assault, we cannot conclude that Alston's conviction for second-degree assault qualifies as a predicate conviction under ACCA. Accordingly, we vacate Alston's sentence and remand for resentencing.

I

In March 2008, officers stopped a vehicle driven by Antoinetta Green for failure to stop at a stop sign. When officers smelled a strong odor of marijuana emanating from the vehicle, they asked the passenger, Willie Alston, to step out of the car. When he did, the officers saw a 9 mm handgun resting on the seat he had vacated. Alston subsequently pleaded guilty to possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1).

The presentence report indicated that Alston qualified for a sentencing enhancement under ACCA based on his Maryland convictions for (1) robbery with a deadly weapon, (2) second-degree assault, and (3) manufacturing a controlled dangerous substance. Alston objected to the report's designation of him as an armed career criminal, contending that there was a lack of evidence from which to determine that the second-degree assault offense for which he was convicted was a violent felony qualifying as an ACCA predicate offense.

At Alston's sentencing hearing, the district court agreed with Alston that the charging document for his second-degree assault conviction did not show on its face that the crime was

a violent felony. The court, however, continued the hearing to allow the government to obtain materials approved by *Shepard*, 544 U.S. at 26, to demonstrate that Alston's second-degree assault conviction was for a violent felony.

The government obtained and submitted the transcript of the proceeding in which Alston pleaded guilty to second-degree assault, which revealed that on March 7, 2002, in the Circuit Court for Baltimore City, Alston entered an *Alford* plea to three counts of second-degree assault and three counts of unlawfully wearing, carrying, or transporting a handgun. During the course of the proceeding, the state prosecutor proffered the evidence that she would have presented at trial, indicating that the State's witnesses would have testified that Alston pointed a gun at three victims and threatened to kill them. Following the proffer, Alston, through counsel, stipulated that the State's witnesses would have testified to that effect, but Alston never agreed to the truth of the proffered facts. The state judge accepted Alston's *Alford* plea and sentenced Alston to five years' imprisonment, with all but three years suspended.

When Alston's sentencing hearing in this case was reconvened, Alston maintained his objection to being designated as an armed career criminal on the ground that the state prosecutor's proffer in connection with the second-degree assault conviction did not satisfy the demands of *Shepard*. Alston argued that although "an *Alford* plea results in a conviction for criminal history purposes[,] . . . it does not result in the kind of certainty that *Shepard* requires for the Court to know . . . what the defendant [was] pleading guilty to."

The district court rejected Alston's argument, reasoning that "by his plea of guilty [in the state court], the defendant effectively acquiesced in" the state judge's acceptance of the facts proffered in support of the guilty plea. Accordingly, the court found that the government had carried its burden of showing that Alston qualified as an armed career criminal

under 18 U.S.C. § 924(e) and sentenced him to the statutory mandatory minimum term of 180 months' imprisonment. Alston appealed, raising the single issue:

> Where the defendant enters a plea under the doctrine announced in *North Carolina v. Alford*, 400 U.S. 25 (1970), can the district court consider the disputed facts proffered by the prosecutor to establish the nature of a prior conviction and whether that conviction qualifies as a [violent felony] under the Armed Career Criminal Act?

## II

A violation of 18 U.S.C. § 922(g) ordinarily carries a maximum prison term of 10 years. *See* 18 U.S.C. § 924(a)(2). But ACCA specifies that a defendant who has "three previous convictions . . . for a violent felony or a serious drug offense, or both, committed on occasions different from one another" must be sentenced to at least 15 years' imprisonment. *Id.* § 924(e)(1). The Act defines a "violent felony" as "any crime punishable by imprisonment for a term exceeding one year" that

> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or

> (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another[.]

*Id.* § 924(e)(2)(B).

The sole question here is whether the district court properly found that Alston's second-degree assault conviction was a conviction for a "violent felony" when the conviction was

obtained pursuant to an *Alford* plea, during which the state prosecutor proffered evidence of conduct constituting a violent felony but Alston agreed only that if the case were tried, "the State's witnesses would testify" as indicated in the proffer.

In Maryland, the statute prohibiting second-degree assault provides simply that "[a] person may not commit an assault" and that a person found guilty "is subject to imprisonment not exceeding 10 years." Md. Code Ann., Crim. Law § 3-203. "Assault" is defined to mean "the crimes of assault, battery, and assault and battery, which retain their judicially determined meanings." *Id.* § 3-201(b). The Maryland courts treat "assault" as a term of art "'connot[ing] any of three distinct ideas: 1. A consummated battery or the combination of a consummated battery and its antecedent assault; 2. An attempted battery; and 3. A placing of a victim in reasonable apprehension of an imminent battery.'" *Cruz v. State*, 963 A.2d 1184, 1188 n.3 (Md. 2009) (quoting *Lamb v. State*, 613 A.2d 402, 404 (Md. Ct. Spec. App. 1992)). A "battery," in turn, is defined in Maryland common law to include "*any* unlawful force used against the person of another, *no matter how slight*." *State v. Duckett*, 510 A.2d 253, 257 (Md. 1986) (internal quotation marks and citation omitted). Relying on state court cases, we have previously noted the resulting broad scope of the Maryland crimes of battery and assault:

> The common law offense of battery thus embraces a wide range of conduct, including kissing without consent, touching or tapping, jostling, and throwing water upon another. It may include even indirect applications of force such as directing a dog to attack or exposing a helpless person to the inclemency of the weather. . . . At the other end of the spectrum, a battery includes a fatal shooting or stabbing of a victim.

*United States v. Kirksey*, 138 F.3d 120, 125 (4th Cir. 1998) (internal quotation marks and citations omitted). Thus, under

Maryland law, second-degree assault encompasses several distinct crimes, some of which qualify as violent felonies and others of which do not. *See Johnson v. United States*, 130 S. Ct. 1265, 1269, 1273 (2010) (suggesting that although a battery conviction for merely "[a]ctually and intentionally touch[ing]" another would not be a conviction for a violent felony, other battery offenses criminalized by the same Florida statute would qualify as violent felonies).

Recognizing this ambiguity, the district court invited the government to produce the transcript of Alston's guilty plea proceeding to determine, under the "modified categorical approach" of *Shepard*, whether Alston was convicted of a violent felony. *See Johnson*, 130 S. Ct. at 1273 (noting that "[w]hen the law under which the defendant has been convicted contains statutory phrases that cover several different generic crimes, some of which require violent force and some of which do not, the 'modified categorical approach' that we have approved permits a court to determine which statutory phrase was the basis for the conviction" (internal quotation marks and citation omitted)); *United States v. Harcum*, 587 F.3d 219, 224-25 (4th Cir. 2009) (applying the modified categorical approach to determine whether a conviction for second-degree assault in Maryland was for a violent felony); *United States v. Simms*, 441 F.3d 313, 315-16 (4th Cir. 2006) (same); *United States v. Coleman*, 158 F.3d 199, 202 (4th Cir. 1998) (en banc) (same); *see also Johnson*, 130 S. Ct. at 1273 (citing *Simms* approvingly).

The transcript from Alston's plea hearing, however, revealed that Alston's conviction was based on an *Alford* plea during which Alston did not adopt or accept the facts proffered by the government. Indeed, when Alston elected to tender an *Alford* plea, the state judge explained to him that "[an *Alford* plea] [i]s when you say, 'I want the deal. I've talked it over with my lawyer. I know what the witnesses are going to say. I think it's in my best interests to take the deal rather than go to trial and run the risk I might get the maximum pen-

alty. So I want the deal, but I don't want to say I did the crime.'" After ascertaining that Alston wished to proceed with an *Alford* plea, the state court instructed Alston to "have a seat because I still have to make sure that the State can prove the charges against you." The court then asked the prosecutor, "What would the witnesses say, what would the State prove if there was a trial?" After the prosecutor outlined the evidence she would have introduced at trial, which indicated that Alston had pointed a gun at three victims and stated that he would kill them all, Alston's counsel "agree[d] that if the case were called, the State's witnesses would testify to that effect."

The district court concluded that the state prosecutor's proffer of facts in the state proceeding was imputable to Alston and therefore could be used under *Shepard* to conclude that Alston's conviction was necessarily for a violent felony.

Alston contends that the district court erred in relying on the proffer to qualify his second-degree assault conviction as a predicate conviction under ACCA. He maintains that the transcript of the plea hearing could be considered *only if he had admitted or confirmed* the factual basis for the plea during the plea colloquy. He argues that because the State's charging documents simply alleged that he had committed second-degree assault and because he entered a guilty plea pursuant to *Alford*, the transcript of his plea hearing does not show that his guilty plea necessarily rested on facts identifying his second-degree assault offense as a type of assault that qualifies as a violent felony. The district court, he contends, therefore violated his Sixth Amendment rights by making a finding of fact about the nature of his second-degree assault conviction in order to impose a sentence above what would otherwise be the statutory maximum.

The question that Alston presents is one of first impression, although a few courts of appeals have addressed analogous questions within the context of the Sentencing Guidelines, and most have adopted a position that supports Alston. *See*

*United States v. Ventura*, 565 F.3d 870, 878-79 (D.C. Cir. 2009) (holding that a factual proffer accompanying a defendant's *nolo contendere* plea is not "within the limited set of evidence that we may look to under *Shepard*'s modified categorical approach"); *United States v. Savage*, 542 F.3d 959, 966 (2d Cir. 2008) (holding that because the defendant entered an *Alford* plea, the plea colloquy contained no factual admissions on which the government could rely to establish the predicate nature of the prior conviction). *But see United States v. Guerrero-Velasquez*, 434 F.3d 1193, 1197 (9th Cir. 2006).

Beginning with *Taylor v. United States*, 495 U.S. 575, 602 (1990), the Supreme Court has held that ACCA "generally requires the trial court to look only to the fact of conviction and the statutory definition of the prior offense" when determining whether a prior conviction qualifies a defendant for the Act's sentencing enhancement. But the Court qualified this general principle by specifying that "[t]his categorical approach . . . may permit the sentencing court to go beyond the mere fact of conviction in a narrow range of cases where a jury was actually required to find all the elements of [a qualifying offense]" in order to convict the defendant. *Id.* For example, the Court posited, even though a burglary is only a violent felony under ACCA if it is a "generic" burglary—that is, an "unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime," *id.* at 599—a defendant's conviction under a burglary statute that also criminalizes the entry of an automobile may nonetheless qualify as an ACCA predicate "if the indictment or information and jury instructions show that the defendant was charged only with a burglary of a building, and that the jury *necessarily* had to find an entry of a building to convict," *id.* at 602 (emphasis added).

In *Shepard*, the Court refined this "modified categorical approach" by extending *Taylor* to convictions stemming from

guilty pleas. Looking for "the right analogs for applying the *Taylor* rule to pleaded cases," the Court specified that

> [i]n cases tried without a jury, the closest analogs to jury instructions would be a bench-trial judge's formal rulings of law and findings of fact, and in pleaded cases they would be the statement of factual basis for the charge, Fed. Rule Crim. Proc. 11(a)(3), shown by a transcript of plea colloquy or by written plea agreement presented to the court, *or by a record of comparable findings of fact adopted by the defendant upon entering the plea.*

*Shepard*, 544 U.S. at 20 (emphasis added). The Court emphasized that "[w]ith such material in a pleaded case, a later court could generally tell whether the plea had 'necessarily' rested on the fact identifying" the crime as a predicate offense under ACCA. *Id.* at 20-21 (quoting *Taylor*, 495 U.S. at 602); *see also id.* at 24 (plurality opinion) (describing the Court's holding as "adher[ing] to the demanding requirement that any sentence under the ACCA rest on a showing that a prior conviction 'necessarily' involved (and a prior plea necessarily admitted) facts equating to" a predicate offense). Accordingly, the Court held that a sentencing court determining whether a guilty plea "necessarily admitted elements of [a predicate] offense is limited to the terms of the charging document, the terms of a plea agreement or *transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant*, or to some comparable judicial record of this information." *Id.* at 26 (majority opinion) (emphasis added).

Two distinct rationales underpin these limitations. First, in confining the materials that can be consulted in determining the nature of a prior conviction, "collateral trials" are avoided. *Shepard*, 544 U.S. at 23; *see also United States v. Dean*, 604 F.3d 169, 175 (4th Cir. 2010) (noting that one aim of *Taylor* and *Shepard* "was to protect sentencing courts from becoming

forums in which the prosecution and defense attempt to reproduce the defendant's earlier trial"). And second, by limiting sentencing courts to a specified set of conclusive records, a "concern that a wider inquiry would violate the Sixth Amendment right to trial by jury" is addressed. *Dean*, 604 F.3d at 172; *see also Shepard*, 544 U.S. at 24-26 (plurality opinion).

Although the Sixth Amendment jury trial right does not include a right to have a jury find the fact of a prior conviction, *see Almendarez-Torres v. United States*, 523 U.S. 224, 239-47 (1998), at least a plurality of the *Shepard* Court was concerned about inquiries into facts about prior convictions that could not be conclusively established from the record and therefore could be disputed. *See Shepard*, 544 U.S. at 24-26 (plurality opinion). The plurality noted that *Taylor* had been prescient in asking, "'If the sentencing court were to conclude, from its own review of the record, that the defendant [who was convicted under a nongeneric burglary statute] actually committed a generic burglary, could the defendant challenge this conclusion as abridging his right to a jury trial?'" *Id.* at 24 (quoting *Taylor*, 495 U.S. at 601). It indicated that the problem arises when the sentencing court seeks to determine, absent conclusive judicial records, what the state court was "required to find" in convicting the defendant. *Id.* at 25. As a plurality of the *Shepard* Court explained:

> [T]he sentencing judge considering the ACCA enhancement would (on the Government's view) make a disputed finding of fact about what the defendant and state judge must have understood as the factual basis of the prior plea, and the dispute raises the concern underlying *Jones* and *Apprendi*: the Sixth and Fourteenth Amendments guarantee a jury standing between a defendant and the power of the State, and they guarantee a jury's finding of any disputed fact essential to increase the ceiling of a potential sentence. While the disputed fact here can be described as a fact about a prior conviction, it is

> too far removed from the conclusive significance of
> a prior judicial record, and too much like the find-
> ings subject to *Jones* and *Apprendi*, to say that
> *Almendarez-Torres* clearly authorizes a judge to
> resolve the dispute.

*Id.* To avoid serious risks of unconstitutionality, the plurality determined that the Court should limit the scope of judicial factfinding on the disputed nature of a prior conviction. *Id.* at 25-26.

Thus, only when the underlying charging document narrows the charge to a crime that amounts to a predicate offense or when "jury instructions, or bench-trial findings and rulings, or (in a pleaded case) . . . the defendant's own admissions or accepted findings of fact confirming the factual basis for a valid plea" establish that the crime for which the defendant was convicted was a predicate offense may a sentencing court rely on *Almendarez-Torres* and enhance the defendant's sentence without running afoul of the Sixth Amendment. *Shepard*, 544 U.S. at 25 (plurality opinion). But when there are no such conclusive judicial records and the ACCA inquiry requires a sentencing court to "make a disputed finding of fact about what the defendant and the state judge must have understood as the factual basis of the prior plea," the disputed fact, although "*about* a prior conviction, . . . is too far removed from the conclusive significance of a prior judicial record . . . to say that *Almendarez-Torres* clearly authorizes a judge to resolve the dispute." *Id.* (emphasis added). In this way, then, *Shepard* restricts the materials that a sentencing court may consult when evaluating the nature of a prior conviction in order to ensure that the court, consistent with the Sixth Amendment, is only finding facts inherent in the fact of a prior conviction or admitted by the defendant. *See Dean*, 604 F.3d at 173; *United States v. Thompson*, 421 F.3d 278, 281-83 (4th Cir. 2005).

In short, *Shepard* prevents sentencing courts from assessing whether a prior conviction counts as an ACCA predicate con-

viction by relying on facts neither inherent in the conviction nor admitted by the defendant.

Against this standard, a prosecutor's proffer of the factual basis for an *Alford* plea does not satisfy the requirements of the modified categorical approach. In entering an *Alford* plea, the defendant waives a trial and accepts punishment, *but he does not admit guilt*, and the prosecutor's proffer of what the State would have proved at trial does not amount to an admission or acceptance of the facts by the defendant. Rather, it serves the role of providing the court with a basis by which to evaluate the voluntariness of the defendant's plea. *See Alford*, 400 U.S. at 38.

In *Alford*, the defendant was indicted for first-degree murder and chose to plead guilty to second-degree murder. At a plea hearing, the court heard the sworn testimony of a police officer who summarized the State's case and the testimony of two additional witnesses. After Alford testified that he had not committed the murder but that he wanted to plead guilty to a reduced charge rather than face the possibility of the death penalty, the trial court accepted his guilty plea and sentenced him to 30 years' imprisonment. *Alford*, 400 U.S. at 26-29.

Vacating the grant of Alford's petition for post-conviction relief, the Supreme Court held that the trial court committed no constitutional error in accepting Alford's plea "[i]n view of the strong factual basis for the plea demonstrated by the State and Alford's clearly expressed desire to enter it despite his professed belief in his innocence." *Alford*, 400 U.S. at 38. The Court noted that although a judgment of conviction resting on a guilty plea is ordinarily "justified by the defendant's admission that he committed the crime charged against him and his consent that judgment be entered without a trial of any kind," "a guilty plea can be accepted when it is accompanied by protestations of innocence and hence contains *only a waiver of trial but no admission of guilt*." *Id.* at 32-33 (emphasis added). The *Alford* Court relied on *Hudson v. United States*, 272 U.S.

451 (1926), which had held that a federal court has the power to impose a prison sentence after accepting a plea of *nolo contendere*, finding implicit in that case the principle that "the Constitution does not bar imposition of a prison sentence upon an accused who is unwilling expressly to admit his guilt but who, faced with grim alternatives, is willing to waive his trial and accept the sentence." *Id.* at 36. The Court further reasoned that there was no material difference between a defendant's refusal to admit guilt and a defendant's affirmative protestation of innocence "when, as in the instant case, a defendant intelligently concludes that his interests require entry of a guilty plea and the record before the judge contains strong evidence of actual guilt." *Id.* at 37.

Thus, although a court presented with an *Alford* plea "must make a careful inquiry into the factual basis" for the plea before accepting it, *United States v. Morrow*, 914 F.2d 608, 613 (4th Cir. 1990), "[t]he distinguishing feature of an *Alford* plea is that the defendant does *not* confirm" that factual basis, *Savage*, 542 F.3d at 962 (emphasis added). And it is this same feature that makes it clear that, under *Shepard*, the prosecutor's proffer of the factual basis for an *Alford* plea may not later be used by a sentencing court to identify the resulting conviction as an ACCA predicate. *Shepard* held, after all, "that enquiry under the ACCA to determine whether a plea of guilty . . . *necessarily admitted* elements of [a qualifying] offense is limited to the terms of the charging document, the terms of a plea agreement or *transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant*, or to some comparable judicial record of this information." *Shepard*, 544 U.S. at 26 (emphasis added).

Here, Alston tendered an *Alford* plea to second-degree assault, and his plea was accepted after the trial court found it was supported by a sufficient factual basis. But his plea did not "necessarily rest[ ] on" facts establishing his second-degree assault offense as a type of assault that qualifies as a

violent felony. *Shepard*, 544 U.S. at 21 (internal quotation marks omitted). To be sure, the prosecutor's proffer that the State's witnesses were prepared to testify that Alston pointed a gun at three individuals and threatened to kill them would have established the predicate nature of the second-degree assault offense had Alston admitted these facts during his plea. But he explicitly pleaded guilty *without* admitting those facts. Nor was the trial court required to find those facts in order to accept Alston's plea and return a conviction. Instead, the judge's evaluation of the prosecutor's proffer was concerned solely with whether the defendant's guilty plea was voluntary and with whether the government had sufficient evidence to support the charge, not with the truth of the government's account of how the offense had been committed. As a result, we cannot say that the facts indicating the violent nature of the second-degree assault charge to which Alston tendered his plea are inherent in the fact of his conviction. These facts therefore could not be found by the sentencing court without risking a violation of the Sixth Amendment.

By analogy, it is clear under *Taylor* and *Shepard* that if Alston had proceeded to trial before a jury on the charge of second-degree assault and the jury had found him guilty after the State's witnesses testified exactly as forecasted by the prosecutor during Alston's *Alford* plea hearing, the resulting second-degree assault conviction could not later be used to enhance his sentence under ACCA unless the jury had been instructed that it was *required* to find all the facts that would establish the second-degree assault offense as a violent felony. *See Shepard*, 544 U.S. at 22 (noting that, under *Taylor*, a jury conviction for a burglary offense under a nongeneric burglary statute could not be counted as a predicate conviction unless the jury had been instructed that it had to find that the defendant broke into a building or structure, even though "[i]f the trial record showed no evidence of felonious entrance to anything but a building or structure, the odds that the offense actually committed was generic burglary would be a turf accountant's dream"). Similarly, here, the State's proffer

of the factual basis for Alston's *Alford* plea, although neces-
sary for the state court's acceptance of the plea, cannot now
establish, with the requisite certainty, that the conviction for
second-degree assault that followed Alston's plea was a con-
viction for a violent felony under ACCA.

We therefore conclude that the district court improperly
relied on Alston's conviction for second-degree assault in
enhancing his sentence under ACCA. Accordingly, we vacate
Alston's sentence and remand for resentencing without con-
sideration of that conviction as a predicate conviction under
ACCA.

*VACATED AND REMANDED*