DAVIS, Circuit Judge,
concurring in part and dissenting in part:
I concur in those portions of the majority opinion affirming the conviction and sentence of Appellant Taylor. With respect, however, I dissent from so much of the majority opinion as affirms the sentence of Appellant Thompson. I explain.
The holding of Shepard v. United States could not be stated more clearly than how Justice Souter stated it:
We hold that enquiry under the ACCA to determine whether a plea of guilty to burglary defined by a nongeneric statute necessarily admitted elements of the generic offense is limited to the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information.
544 U.S. 13, 26, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005) (emphasis added).[1] I refer to the highlighted language as “the Shepard guarantee.”
Despite the pristine clarity of Shepard’s holding, the majority concludes that garden variety agency principles permit a rewriting of it. Thus, according to the majority, it can ignore Shepard’s admonition that in applying the modified categorical approach, a guilty plea transcript must show a “colloquy between [the] judge and [the] defendant” and that “the factual basis for the plea [be] confirmed by the defendant.” Rather, the majority insists, the Shepard holding may be revised to read: a guilty plea transcript must show a “colloquy between [the] judge and [the] defendant [or his attorney],” and that “the factual basis for the plea [must be] confirmed by the defendant [or his attorney].”[2] This *350 rewriting of the Shepard guarantee is unwarranted and unjustified.
As the government concedes, in this case, the record shows conclusively that the state court judge never even addressed a question to the then seventeen-year-old Thompson regarding his agreement or disagreement with the state prosecutor’s proffer. See Gov’t Br. at 29 (“After the prosecutor completed the factual proffer, the state court asked defense counsel, ‘Any additions or corrections?’ ”) (emphasis added).[3] Clearly, Thompson never had an opportunity to answer a question that the judge never asked him. I can find no evidence in any Supreme Court authority (and the majority opinion cites none) that the Supreme Court intended to permit an attorney’s say-so, rather than the defendant’s own personal admission (as Shepard makes plain), to ratchet up the maximum sentence for a conviction under 18 U.S.C. § 922(g)(1) from ten years’ incarceration to life in prison, together with a mandatory minimum sentence of 15 years’ incarceration.
This does not mean, of course, “that the specific relevant word in the plea colloquy must come from the defendant himself.” United States v. Eskridge, 420 Fed.Appx. 837, 844 (10th Cir.2011). Rather, “[i]t is sufficient if the factual basis for the plea is summarized by another party — an attorney for the defense or the government, or the court,” so long as the factual basis is “then confirmed by the defendant.” Id. (emphasis added); cf. United States v. Wright, 166 Fed.Appx. 393, 395 (10th Cir. 2006) (after prosecutor’s proffer in support of the defendant’s guilty plea to state burglary charge, judge asked defendant, “[y]ou heard the Assistant District Attorney state the evidence they would produce in this matter were you to go to trial. Do you dispute any portion of that evidence?” and defendant answered “no” and defense attorney separately responded “no” to similar question, held: “[T]he factual basis for the plea did not rest solely on the prosecutor’s statement. Wright was given an opportunity to either confirm or dispute the factual basis, and he confirmed it. Defense counsel also had an opportunity to dispute the factual basis and declined;” ACCA enhancement affirmed).[4] *351 The very case cited by the majority in support of its expansive agency theory, New York v. Hill, 528 U.S. 110, 120 S.Ct. 659, 145 L.Ed.2d 560 (2000), illustrates what we all well know: there exists a limited category of decisions, recognized in every state’s system of criminal justice (as well as in the federal system), that the law has long regarded, jealously, as the defendant’s alone, personally, to make. Specifically, in a passage from Hill not quoted in the majority opinion, Justice Scalia carefully explained as follows:
What suffices for waiver depends on the nature of the right at issue. “[W]hether the defendant must participate personally in the waiver; whether certain procedures are required for waiver; and whether the defendant’s choice must be particularly informed or voluntary, all depend on the right at stake.” For certain fundamental rights, the defendant must personally make an informed waiver. See, e.g., Johnson v. Zerbst, 304 U.S. 458, 464-465, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938) (right to counsel); Brookhart v. Janis, 384 U.S. 1, 7-8, 86 S.Ct. 1245, 16 L.Ed.2d 314 (1966) (right to plead not guilty). For other rights, however, waiver may be effected by action of counsel. “Although there are basic rights that the attorney cannot waive without the fully informed and publicly acknowledged consent of the client, the lawyer has-and must have-full authority to manage the conduct of the trial.” Taylor v. Illinois, 484 U.S. 400, 417-418, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988). As to many decisions pertaining to the conduct of the trial, the defendant is “deemed bound by the acts of his lawyer-agent and is considered to have ‘notice of all facts, notice of which can be *352 charged upon the attorney.’ ” Thus, decisions by counsel are generally given effect as to what arguments to pursue ..., what evidentiary objections to raise ..., and what agreements to conclude regarding the admission of evidence. Absent a demonstration of ineffectiveness, counsel’s word on such matters is the last.
Hill, 528 U.S. at 114-15, 120 S.Ct. 659 (some citations omitted).
At least under existing Supreme Court precedents, the Shepard guarantee does not rise to the level of a textually-rooted fundamental constitutional right. But see United States v. Thompson, 421 F.3d 278, 282 n. 3 (4th Cir.2005) (Wilkinson, J.) (“It did not escape the Court’s notice in Shepard that the rule it announced might have constitutional implications.”).[5] Still, the majority’s decision here is profound. It assigns the waiver of protection afforded by the Shepard guarantee, the requirement that the state court judge have engaged in a colloquy “with the defendant” and that “the defendant” have confirmed the dispositive facts (that could later lead to a doubling or tripling or quadrupling of a federal sentence of incarceration), to the category of a mere decision “pertaining to the conduct of the trial.” Hill, 528 U.S. at 115, 120 S.Ct. 659.
This grievous miscalculation is a decision that I cannot join. Rather, given the extraordinary consequences for the defendant, I would hold that the plain language of the Shepard guarantee, in light of the context in which the Supreme Court used that language, means that the Shepard guarantee is best recognized as a form of protection for a defendant which rises to the level of a “basic right[ ] that the attorney cannot waive without the fully informed and publicly acknowledged consent of the client.” Id.
The Supreme Court did not intend that the term “Shepard-approved document” would become talismanic. To the contrary, it matters what is contained in, and revealed by, such a document. When the Shepard-approved document is a transcript of a guilty plea colloquy, I believe the Court meant what it said when it described a “transcript of [the] colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant.” Specifically, the Court has instructed lower federal courts to rely on “the defendant’s own admissions.” Shepard, 544 U.S. at 25, 125 S.Ct. 1254 (emphasis added). The majority’s refusal to adhere to that command is error.[6]
*353 Respectfully, therefore, I dissent from the affirmance of the judgment as to Appellant Thompson. I would vacate his sentence and remand for resentencing.

. Although the entirety- of Justice Souter’s opinion in Shepard was joined only by three other justices, Justice Thomas concurred in the portion of Justice Souter’s opinion quoted above. See 544 U.S. at 28, 125 S.Ct. 1254.

. As Thompson cogently argues before us, even apart from the question of whether his lawyer's words should be charged to him and treated as a binding judicial admission under the modified categorical approach to the ACCA, it is a stretch to regard a lawyer’s statement that there are “no additions or deletions’’ to a prosecutor’s proffer in support of a guilty plea as a binding judicial admission of the truth of the potential evidence just summarized. See generally United States v. McMurray, 653 F.3d 367 (6th Cir.2011).
Maryland law and practice plainly are to the contrary. See Bishop v. State, 417 Md. 1, 7 A.3d 1074, 1085-86 (2010) (describing “hybrid pleas” under Maryland criminal practice and explaining: "There is a distinction between an agreed statement of facts and evidence offered by way of stipulation. Under an agreed statement of facts both [the] State and the defense agree as to the ultimate facts.... On the other hand, when evidence is offered by way of stipulation, there is no agreement as to the facts which the evidence seeks to establish. Such a stipulation only goes to the content of the testimony of a particular witness if he were to appear and testify.”) (quoting Barnes v. State, 31 Md.App. 25, 354 A.2d 499, 505-06 (1976)). Without question, and ironically, the Maryland Court of Appeals would never treat Thompson’s attorney’s statement that she had "no additions or deletions” to the prosecutor's proffer of how the prosecutor’s witnesses would testify were the case to go forward to trial, as a binding judicial admission by Thompson regarding the truth of an evidentiary proffer to establish a factual basis for a guilty plea. Id. *350 See also McMurray, 653 F.3d at 380 ("The state trial court was not required to determine the truth of the state’s proffered facts relating how the crime was committed before accepting McMurray’s best-interest plea of guilty. The factual-basis requirement in Federal Rule of Criminal Procedure 11 and the equivalent state criminal-procedure rules, including Tennessee, is designed to help the trial judge evaluate the voluntariness of the defendant’s plea.”); id. at 387 (McKeague, J., dissenting) ("And while a factual basis was read at the plea colloquy, the sentencing judge never asked the defendant to confirm or accept — by Alford plea or otherwise — that factual basis. The court merely had the factual basis read, and then later asked, 'Are you entering a best interest plea of guilty on that one charge of aggravated assault?' to which McMurray replied ‘Yes, sir.’ Therefore, the state [sic] failed to establish that McMurray 'necessarily' pleaded guilty to a violent felony.... ”).

. Indeed., as the majority opinion only implicitly acknowledges, see Maj. Op. at 341-42, 347, 347-48, the state court judge in Thompson’s second degree assault case never even asked Thompson for his plea or invited him to change his extant not guilty plea to a guilty plea; in short, Thompson never actually pled guilty, viva voce. Rather, on several occasions during the plea colloquy; Thompson reiterated (in response to questions by his own attorney) that it was his "intention” to plead guilty. Id. I need not and do not rely on this glaring omission, however, because the transcript of Thompson's guilty plea colloquy is otherwise insufficient to satisfy Shepard for the reasons discussed.

. Contrary to the government's argument that Thompson has somehow waived his claim of error as to the district court’s application of the ACCA, I agree with the majority of the panel that there is no genuine question as to *351 whether Thompson has properly preserved the issue on appeal. See Appellants’ Br. at 10 ("[T]he transcript of the guilty plea underlying [Thompson's second degree assault conviction] reveals no admission of wrongdoing by Mr. Thompson.”); J.A. at 593 (defense counsel asserting that Thompson "did not qualify as an ACCA”); J.A. at 601 (defense counsel arguing at sentencing that, “[s]econd degree assault by itself is not a crime of violence and has been so held and rightly so.”)
To be sure, Thompson has dressed his arguments before us in the garb of United States v. Alston, 611 F.3d 219, 222-23 (4th Cir.2010) (holding that a prior conviction based on an Alford plea does not support application of the ACCA), which was decided many months after his sentencing hearing. But, as the holding in Alston is itself based squarely on the plain language of Shepard, Alston's specific reliance on the fact that the defendant in that case had tendered an Alford plea is wholly inconsequential to the properly preserved ACCA issue in this case. See United States v. Vann, 660 F.3d 771, 776 (4th Cir.2011) (en banc) ("Shepard prevents sentencing courts from assessing whether a prior conviction counts as an ACCA predicate conviction by relying on facts neither inherent in the conviction nor admitted by the defendant.” (quoting Alston))-, see also United States v. Flores-Vasquez, 641 F.3d 667, 672-73 (5th Cir.2011) ("[T]he mere fact that a defendant enters a plea denominated as an 'Alford plea’ does not preclude a sentencing court from relying upon a proffer of facts which was independently confirmed by the defendant.”), cert. denied, - U.S. -, 132 S.Ct. 361, — L.Ed.2d -, No. 11-6006, 2011 WL 4536495 (U.S. Oct. 3, 2011). But see United States v. Toyer, 414 Fed.Appx. 584 (4th Cir. 2011) (unpublished) (strictly limiting the holding in Alston to prior convictions based on formal Alford pleas).
In any event, only a future en banc court will be able to reconcile the majority's holding and rationale in this case with the holding and rationale in Alston. This is so because the acts and statements of Thompson's agent/lawyer in this case are indistinguishable in form or substance from the acts and statements of Alston's agent/lawyer. See Alston, 611 F.3d at 221 ("Following the proffer, Alston, through counsel, stipulated that the State’s witnesses would have testified [that he had pointed a handgun at three victims], but Alston never agreed to the truth of the proffered facts.”) (emphasis added).

. Of course, what Judge Wilkinson was alluding to, in part, in his discussion in Thompson, 421 F.3d at 282 n. 3, was the following passage from Justice Souter’s opinion in Shepard, in which the Justice reiterated the wisdom of Taylors categorical approach, as refined in Shepard:
The Court thus anticipated the very rule later imposed for the sake of preserving the Sixth Amendment right, that any fact other than a prior conviction sufficient to raise the limit of the possible federal sentence must be found by a jury, in the absence of any waiver of rights by the defendant.
Shepard, 544 U.S. at 24, 125 S.Ct. 1254 (emphasis added). Cf. United States v. Milam, 443 F.3d 382, 387 (4th Cir.2006) (“To presume, infer, or deem a fact admitted because the defendant has remained silent, however, is contrary to the Sixth Amendment.”).

. In response to this partial dissent, the majority has suggested in a footnote that immediately after Thompson's attorney told the state court judge that she had “no additions or corrections to make,” “Thompson then stated he had nothing to add.” Maj. Op. at 348 n. *. (emphasis added) In fact, however, the portion of the transcript of the guilty plea proceedings referred to by the majority plainly shows that Thompson most assuredly did not make the statement attributed to him by the majority immediately after his lawyer’s disclaimer. Rather, the record shows that the state court judge had proceeded to the sen *353 tencing phase of the hearing and that, when Thompson was invited to exercise his right of allocution, he simply declined. The transcript of the colloquy among the judge, the defense attorney (“Ms. Shapiro”) and the prosecutor ("Mr. McDaniel”) reads as follows immediately after the state’s proffer:
THE COURT: Any additions or corrections?
MS. SHAPIRO: No, Your Honor.
THE COURT: Based on that statement of facts, Mr. Thompson, I find you guilty of wear, carrying and transporting and assaulting Officer Geolamas. All right. With regards to sentencing, Mr. McDaniel?
MR. McDANIEL: Your Honor, State would submit on the conversations at the bench.
THE COURT: Miss Shapiro?
MS. SHAPIRO: I would submit as well. Mr. Thompson, is there anything that you would like to say to the judge—
THE COURT: Well, before he says anything, have you prepared the sentencing guideline sheet, Mr. McDaniel?
MR. McDANIEL: Yes, Your Honor.
THE COURT: And have you shown it to Miss Shapiro?
MR. McDANIEL: Here you are.
THE COURT: Miss Shapiro, is that correct?
MS. SHAPIRO: Yes, Your Honor.
THE COURT: And completely filled out? MS. SHAPIRO: Yes, Your Honor.
THE COURT: Then, I assume, Mr. McDaniel, you filled it out correctly to the best of your knowledge?
MR. McDANIEL: To the best of my knowledge, Your Honor.
THE COURT: All right. Would you please submit it to the clerk. All right. Now, would you advise your client of his right of allocution.
MS. SHAPIRO: Mr. Thompson, is there anything that you would like to say to the judge? I have spoken on your behalf this morning. You have an opportunity to speak if you'd like to or you can remain silent. Is there anything else you’d like to say?
THE DEFENDANT: No, ma’am.
THE COURT: All right.
J.A. at 639-40.
I do respect the contraiy views of my good colleagues in the majority as to what the law requires in this case; our difference is one born of an earnest and studied effort by all to apply the law faithfully. No less so than judicial hostility (seen in some quarters) to the vagaries of the Supreme Court’s sentencing jurisprudence under the Armed Career Criminal Act, judicial disagreements over the appropriate interpretation and application of the principles the Court has enunciated are entirely understandable. In the end, only the Supreme Court itself can provide the clarification so urgently needed. In that spirit, I would suggest that Thompson’s counsel (who has ably represented his client upon appointment by this court) save the taxpayers a few dollars and forego the customary petition for rehearing in this case and seek certiorari without inordinate delay.