**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

ALI SINA KARIMI, a/k/a Ali Sina
Kami, a/k/a Karimi Mamoud,

*Petitioner,*

v.                                                    No. 11-1929

ERIC H. HOLDER, JR., Attorney
General,

*Respondent.*

ALI SINA KARIMI, a/k/a Ali Sina
Kami, a/k/a Karimi Mamoud,

*Petitioner,*

v.                                                    No. 12-1076

ERIC H. HOLDER, JR., Attorney
General,

*Respondent.*

On Petitions for Review of an Order of the
Board of Immigration Appeals.

Argued: January 29, 2013

Decided: May 13, 2013

Before KING, WYNN, and DIAZ, Circuit Judges.

Petition for review granted; vacated and remanded with instructions by published opinion. Judge Diaz wrote the opinion, in which Judge Wynn joined. Judge King filed a dissenting opinion.

---

## COUNSEL

**ARGUED:** David M. Belczyk, JONES DAY, Pittsburgh, Pennsylvania, for Petitioner. Matthew Allan Spurlock, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent. **ON BRIEF:** Thomas S. Jones, JONES DAY, Pittsburgh, Pennsylvania, for Petitioner. Stuart F. Delery, Acting Assistant Attorney General, Civil Division, Ada E. Bosque, Senior Litigation Counsel, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

---

## OPINION

DIAZ, Circuit Judge:

Ali Sina Karimi petitions this court for review of a Board of Immigration Appeals ("BIA") final order of removal. Karimi contends the BIA erred when it ruled that his Maryland second-degree assault conviction was for a "crime of violence" under 18 U.S.C. § 16, and thus an "aggravated felony" under 8 U.S.C. § 1101(a)(43)(F) that triggered his removability. For the reasons that follow, we grant Karimi's petition for review, vacate the BIA's order of removal, and remand to the BIA with instructions to reinstate Karimi's asylee status.

I.

A.

Karimi, a native and citizen of Afghanistan, entered the United States in 1990. He was granted asylum in 1999.

In October 2007, Karimi was arrested in Maryland for driving under the influence. He was still intoxicated at the police station when he noticed that the officer processing his arrest, Officer MacKenzie, was writing down a large number of citations. As Karimi later admitted during his plea hearing, he then became "belligerent and somewhat out of control," "yelling and causing a disturbance in the station." J.A. 291. Officer MacKenzie laid her hand on a table next to Karimi and told him to quiet down. At this point, Karimi "grabbed" Officer MacKenzie's hand. In her statement of probable cause, which was incorporated into Maryland's charging document, Officer MacKenzie wrote that, as Karimi grabbed her, he spat on her arm, then "jumped up and acted as if he was going to strike [her] with his free hand." J.A. 321.

In March 2008, Karimi pleaded guilty to driving under the influence of alcohol ("DUI") and to misdemeanor second-degree assault under Maryland Annotated Code, Criminal Law section 3-203, a statute that broadly defines misdemeanor assault, based on common law, to encompass even minor touching.[1] *See United States v. Kirksey*, 138 F.3d 120, 125 (4th Cir. 1998). At Karimi's plea hearing before the Circuit Court of Montgomery County, the prosecutor informed the court that the grabbing and spitting formed the basis for the assault charge. In reciting the evidence it would have pre-

---

[1]Although misdemeanor second-degree assault under section 3-203 is governed by common law definitions, felony second-degree assault under that same section is statutorily defined, and prohibits a person from intentionally causing physical injury to another if he knows or has reason to know that the other is a law enforcement officer, parole agent, or probation agent engaged in the performance of his or her official duties. Md. Code Ann., Crim. Law §§ 3-203(c)(2)-(3). Thus, unlike the misdemeanor, the section 3-203 felony does not encompass minor touching. Karimi was charged with both misdemeanor and felony second-degree assault under section 3-203, but only pleaded to the lesser offense. J.A. 310. Of course, the labeling of his crime as a misdemeanor under Maryland law has no bearing on whether it constitutes an "aggravated felony" under the Immigration and Nationality Act.

sented at trial, the prosecutor never mentioned Officer Mac-Kenzie's allegation that Karimi had jumped up and acted as if he was going to strike her. Karimi, for his part, denied the prosecutor's assertion that he had intentionally spit on Officer MacKenzie, but admitted to becoming belligerent and grabbing her hand. J.A. 293. The court accepted Karimi's guilty plea based on this admission and sentenced him to three years' imprisonment for the assault charge, with all but four months suspended. He received a one-year concurrent prison term, wholly suspended, for the DUI charge.

B.

In August 2008, relying on Karimi's Maryland second-degree assault conviction, the Department of Homeland Security moved to terminate Karimi's asylum. He was served with a Notice to Appear charging him with removability under the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1227(a)(2)(A)(iii), for his conviction of an aggravated felony, a crime of violence as defined in 18 U.S.C. § 16 for which the term of imprisonment was at least one year.

In January 2009, Karimi first appeared before an Immigration Judge ("IJ") in El Paso, Texas. The IJ held that Karimi's Maryland second-degree assault conviction constituted an aggravated felony, found him removable as charged, and terminated his asylum. The case was then transferred to Baltimore, Maryland, where Karimi filed a motion to reconsider. In October 2010, after reviewing the transcript of Karimi's assault conviction plea hearing, the Baltimore IJ denied the motion to reconsider, finding that "in applying the modified categorical approach, the Records of Conviction do demonstrate that the force involved was violent force, that is, capable of causing physical pain or injury." J.A. 345 (citing *Johnson v. United States*, 130 S. Ct. 1265 (2010)). The IJ issued a final order of removal in March 2011.

Karimi timely appealed to the BIA, challenging the IJ's ruling that his second-degree assault conviction was an aggra-

vated felony. However, the BIA dismissed the appeal, concluding that the IJ had "properly conducted a modified categorical inquiry . . . and found that the respondent's conviction was for a crime of violence as contemplated under the [INA]." J.A. 36.

Karimi timely petitioned this court for review and also filed a motion to reconsider and reopen with the BIA. The BIA denied that motion, and Karimi separately petitioned this court for review of that order.[2] We consolidated these cases, and they are now ripe for our review.

## II.

Before turning to the merits, we first consider a motion to remand filed by the Attorney General on the day before we heard oral argument in this case.

The Attorney General submits that, in light of the BIA's apparently mistaken belief that Karimi did not dispute the IJ's physical force finding on appeal, remand is necessary to allow the BIA to determine in the first instance whether Karimi's assault involved sufficient force to constitute a crime of violence. Resp't's Mot. at 4. Specifically, the Attorney General insists that the BIA should be allowed to consider whether Karimi's plea was predicated upon the facts in Officer MacKenzie's statement of probable cause and, if not, to address whether the grabbing alone constituted the use of violent force. *Id.* at 4-5.

---

[2]Although Karimi petitioned for this court's review of the BIA's order denying his motion to reconsider and reopen, he abandoned this challenge by failing to raise it in his opening brief. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 241 n.6 (4th Cir. 1999) (noting that pursuant to Fed. R. App. P. 28(a)(9)(A), issues not briefed are deemed abandoned). We therefore do not address whether the BIA acted within its discretion in denying Karimi's motion to reconsider and reopen.

We see no need for remand on these issues. Even though the BIA mistakenly believed Karimi had not appealed the IJ's physical force determination, it did pass on that question in the first instance when it affirmed the IJ's finding. Meanwhile, the specific issues on which the Attorney General seeks clarification do not require the BIA's particular expertise, as they concern only whether Karimi's conduct falls within the scope of § 16, which is not a question of immigration law. Reviewing the complete record of Karimi's conviction, we are able to determine—for reasons we explain below—that Karimi's plea was not predicated on the facts in the statement of probable cause, and that the grabbing did not, in itself, constitute the use of violent force. We thus conclude that remand for reconsideration of these questions would serve no purpose.

### III.

The central issue before us is whether Karimi's 2008 Maryland second-degree assault conviction was for a "crime of violence" as defined by 18 U.S.C. § 16(a), and thus an aggravated felony under 8 U.S.C. § 1101(a)(43)(F) that renders Karimi removable.[3]

We review de novo the legal question whether Karimi's prior conviction constitutes an aggravated felony. *Mbea v. Gonzales*, 482 F.3d 276, 279 (4th Cir. 2007). Although we generally defer to the BIA's interpretations of the INA, where, as here, the BIA construes statutes over which it has no particular expertise, its interpretations are not entitled to deference. *Garcia v. Gonzales*, 455 F.3d 465, 467 (4th Cir.

---

[3]The Attorney General initially argued that we lacked jurisdiction to resolve this issue, contending that Karimi failed to preserve his argument during the BIA proceedings. However, in the Attorney General's motion to remand, he apparently concedes that Karimi raised this issue before the BIA. Resp't's Mot. at 4. In any event, we are satisfied that Karimi properly preserved the argument both before the Baltimore IJ, J.A. 200, and in his BIA notice of appeal, J.A. 64.

2006). In removal proceedings, the government bears the burden of proving removability—and therefore whether Karimi committed an aggravated felony—by clear and convincing evidence. *Salem v. Holder*, 647 F.3d 111, 116 (4th Cir. 2011).

An asylee convicted of an "aggravated felony," as defined in 8 U.S.C. § 1101(a)(43)(F), is removable pursuant to 8 U.S.C. § 1158(c)(2)(B). An aggravated felony includes a "crime of violence," as set forth in 18 U.S.C. § 16, "for which the term of imprisonment" is "at least one year." 8 U.S.C. § 1101(a)(43)(F). Since Karimi does not dispute that he was sentenced to more than one year in prison for his Maryland assault conviction, we need only resolve whether that conviction constituted a crime of violence.[4]

A "crime of violence" is:

> (a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

> (b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 16. The Supreme Court interpreted these provisions in *Leocal*:

> In construing both parts of § 16, we cannot forget that we ultimately are determining the meaning of the term "crime of violence." The ordinary meaning

---

[4]The Attorney General does not contend that Karimi's Maryland DUI conviction supports his removability. *See Leocal v. Ashcroft*, 543 U.S. 1, 4 (2004) (holding that an immigrant's conviction under Florida's comparable DUI statute was not a conviction for a crime of violence that rendered him deportable).

of this term, combined with § 16's emphasis on the use of physical force against another person (or the risk of having to use such force in committing a crime), suggests a category of violent, active crimes . . . .

543 U.S. at 11. And more recently, in *Johnson*, the Court examined whether a defendant's Florida battery conviction constituted a "violent felony" under the Armed Career Criminal Act ("ACCA").[5] 130 S. Ct. at 1268. In doing so, the Court explained that the phrase "'physical force' means *violent* force—that is, force capable of causing physical pain or injury to another person." *Id.* at 1271. Thus, the Court determined that a conviction under the Florida battery statute did not categorically constitute a violent felony because that statute prohibits *any* intentional contact, "no matter how slight." *Id.* at 1269-70.

To determine whether a prior state conviction constitutes a crime of violence, we generally follow the categorical approach. *See United States v. Torres-Miguel*, 701 F.3d 165, 167 (4th Cir. 2012); *Mbea*, 482 F.3d at 279. This approach "looks only to the statutory definition of the state crime and the fact of conviction to determine whether the conduct criminalized by the statute, including the most innocent conduct, qualifies as a 'crime of violence.'" *Torres-Miguel*, 701 F.3d at 167 (internal quotations omitted).

In a narrow range of cases, however, "[w]hen the law under which the defendant has been convicted contains statutory phrases that cover several different generic crimes, some of

---

[5]The *Johnson* Court noted the similarity between the terms "violent felony" in the ACCA and "crime of violence" in § 16, observing that both include "any felony offense which 'has as an element the use . . . of physical force against the person or property of another[.]" *Id.* at 1270-71. Indeed, it relied on *Leocal*'s interpretation of § 16 in reaching its ACCA holding. *Id.* Accordingly, we rely on *Johnson* here.

which require violent force and some of which do not," we may apply a modified categorical approach. *Johnson*, 130 S. Ct. at 1273. This approach allows us to consider "whether the specific conduct underlying a defendant's prior state conviction constitutes a crime of violence by examining 'the terms of the charging document, . . . a plea agreement, . . . [a] transcript of colloquy between judge and defendant, . . . or . . . some comparable judicial record' revealing the 'factual basis for the plea.'" *Torres-Miguel*, 701 F.3d at 167 (quoting *Shepard v. United States*, 544 U.S. 13, 26 (2005)) (alterations in original).[6] In applying the modified categorical approach, we may not determine whether a prior conviction constitutes a crime of violence by relying on "facts neither inherent in the conviction nor admitted by the defendant." *United States v. Alston*, 611 F.3d 219, 226 (4th Cir. 2010). Rather, in examining a prior conviction stemming from a guilty plea, we rely only on those *Shepard*-approved documents from which we can tell whether the defendant's plea "necessarily admitted" facts identifying the offense as a crime of violence. *Id.* at 224-25 (citing *Shepard*, 544 U.S. at 20-21, 24, 26).

Because Maryland's second-degree assault statute punishes both violent and nonviolent conduct, we have traditionally used the modified categorical approach when examining prior convictions under that statute. *See id.* at 223; *United States v. Harcum*, 587 F.3d 219, 224-25 (4th Cir. 2009); *United States v. Simms*, 441 F.3d 313, 315-16 (4th Cir. 2006). However,

---

[6]*Taylor v. United States*, 495 U.S. 575, 600-02 (1990), and *Shepard* set forth the categorical and modified categorical approaches used to consider whether a defendant's prior convictions constitute "violent felon[ies]" triggering ACCA's sentencing enhancements. We have extended this framework to determine whether certain crimes qualify a defendant for a "crime of violence" enhancement under the Sentencing Guidelines. *See United States v. Donnell*, 661 F.3d 890, 893 n.3 (4th Cir. 2011). Likewise, we have used this framework in the immigration context to determine whether an alien is removable as a result of a prior aggravated felony conviction. *See Mbea*, 482 F.3d at 279-80; *Soliman v. Gonzales*, 419 F.3d 276, 285 (4th Cir. 2005).

*Johnson* and our recent decision in *United States v. Gomez*, 690 F.3d 194 (4th Cir. 2012), cast some doubt on the continued viability of the approach in this context. Interpreting *Johnson* in *Gomez*, we held that "the modified categorical approach necessarily applies only to those statutory offenses in which the statute itself is divisible." 690 F.3d at 200. Thus, because the Maryland second-degree assault statute is not itself technically divisible—meaning that it does not contain "statutory phrases that cover several different generic crimes, some of which require violent force and some of which do not," *Johnson*, 130 S. Ct. at 1273—*Gomez* indicates that convictions under the statute may not be susceptible to the modified categorical approach despite the statute's broad coverage of both violent and nonviolent conduct. *See United States v. Bailey*, No. 11-4774, 2012 WL 5458485 (4th Cir. Nov. 9, 2012) (unpublished). On the other hand, *Gomez* specifically declined to renounce the application of the modified categorical approach to convictions under Maryland's second-degree assault statute, leaving open the possibility that for statutes "based in common law" whose "elements are judicially determined," the absence of statutory divisibility may not automatically foreclose the modified categorical approach. 690 F.3d at 202.

While we recognize some ripples of uncertainty in the wake of *Gomez*, we note that the Supreme Court, in *Descamps v. United States*, No. 11-9540 (U.S. argued Jan. 7, 2013), appears poised to calm these waters. *Descamps* concerns whether a defendant's prior state burglary conviction under California Penal Code § 459 constitutes a generic burglary under the ACCA. Just as Maryland second-degree misdemeanor assault convictions do not require violent touching (and therefore are not categorically "crime[s] of violence" under § 16), burglary convictions under Cal. Penal Code § 459 do not require that the defendant's entry into a building be *unlawful* (and therefore are not categorically "burglar[ies]" under the ACCA, which does include unlawfulness as an element of the generic burglary offense). The issue in *Descamps*

is thus whether, when a state crime does not require an element of the federal crime, the federal court may find the existence of that element by examining the state record of conviction using the modified categorical approach.

In any event, the instant case does not require us to resolve whether continued application of the modified categorical approach to Maryland second-degree assault convictions is permissible. This is because neither of the two possible approaches—the strict categorical or the modified categorical—can sustain the BIA's determination that Karimi committed an aggravated felony.

Karimi clearly prevails under the strict categorical approach since, as we have repeatedly observed, Maryland's second-degree assault statute reaches violent and nonviolent touching alike. *See Alston*, 611 F.3d at 222-23; *Harcum*, 587 F.3d at 224. Accordingly, convictions under the statute, including Karimi's, cannot categorically be crimes of violence. *See Johnson*, 130 S. Ct. at 1270.

Under the modified categorical approach, the Attorney General argues that the *Shepard*-approved conviction documents show that Karimi intended violent physical force against Officer MacKenzie when he grabbed her hand. Specifically, the Attorney General points to the plea hearing transcript in which Karimi admitted to "becoming belligerent and somewhat out of control" before grabbing Officer MacKenzie. Resp't's Br. at 19 (citing J.A. 258). The Attorney General also points to Officer MacKenzie's statement of probable cause, which alleged that as Karimi grabbed her hand "he also spat on [her] arm" and "jumped up and acted as if he were going to strike [her] with his free hand." J.A. 321. This conduct, the Attorney General submits, supports the BIA's finding that Karimi's conviction involved the use, attempted use, or threatened use of violent force, qualifying it as a crime of violence under § 16(a).

Karimi contends that those facts of the crime which he "necessarily admitted" in entering his plea do not support the BIA's conclusion that he committed a crime of violence. Pet'r's Br. at 13 (quoting *Alston*, 611 F.3d at 224-25). While he concedes that Officer MacKenzie's statement of probable cause may be properly considered since it was incorporated into the charging document, *id.* at 14 (citing *Simms*, 441 F.3d at 316-18), Karimi argues that it should be afforded significantly less weight than the plea colloquy transcript because it "is a one-sided account of events that is unadmitted by the defendant." *Id.* As to the plea colloquy, Karimi insists that the only fact he necessarily admitted to support his assault conviction was that he "grabbed Officer MacKenzie's hand that was on the table." J.A. 291. This conduct, Karimi submits, did not rise to the level of violent physical force capable of causing pain or injury, as underscored by the Maryland prosecutor's acknowledgement that "there was no harm or injury done to the officer" as a result of the grabbing. J.A. 292.

We agree with Karimi and hold that the conduct to which he necessarily admitted and on which his conviction necessarily rested—"grabbing" Officer MacKenzie's hand—did not constitute the use of "physical force" as that term is defined in *Johnson*. 130 S. Ct. at 1271. Grabbing, on its own, is not necessarily "*violent* force—that is, force capable of causing physical pain or injury to another person." *Id.* Of course, the fact that Officer MacKenzie was not actually injured does not foreclose the possibility that the grabbing was powerful enough to be *capable* of causing physical pain or injury. But it is the Attorney General who bears the burden of showing by clear and convincing evidence the violent nature of Karimi's assault, and nothing in the record suggests that the grabbing was so forceful as to be capable of causing harm. Similarly, we find Karimi's admission to "becoming belligerent and somewhat out of control" insufficient to establish that he committed a crime of violence. J.A. 291. Although hardly a model of civility, this behavior does not necessarily entail

the use, attempted use, or threatened use of violent physical force—even when coupled with the act of grabbing.

As for the allegation in Officer MacKenzie's statement of probable cause that Karimi "acted as if he was going to strike [her] with his free hand," J.A. 321, we acknowledge that if admitted as a factual basis for the conviction, this conduct would involve "the use, attempted use, or threatened use of physical force against the person . . . of another" sufficient to constitute a crime of violence. 18 U.S.C. § 16(a). We also recognize that the statement, having been expressly incorporated into Maryland's charging document, is *Shepard*-approved and may be considered as part of our inquiry under the modified categorical approach. *See Simms*, 441 F.3d at 316-18. However, as Karimi argues, reliance on this one-sided account would be improper under our precedent, which prevents courts in this context from "relying on facts neither inherent in the conviction nor admitted by the defendant." *Alston*, 611 F.3d at 226.[7] Karimi clearly never admitted to the allegation in Officer MacKenzie's statement of probable cause, and it was not a fact inherent in his guilty plea. Our unwillingness to afford greater weight to the statement of probable cause is reaffirmed, moreover, by the fact that the Maryland prosecutor never mentioned Officer MacKenzie's allegation in her recitation of evidence to be presented at trial.

---

[7]The Attorney General argues that Karimi's reliance on *Alston* is misplaced because Alston's plea was entered pursuant to *North Carolina v. Alford*, 400 U.S. 25 (1970), and therefore did not adopt or admit the facts ultimately used to support his conviction; the Attorney General correctly notes that, unlike Alston, Karimi did admit to facts supporting his conviction. But we decline to read *Alston* so narrowly. Its holding turned not on the *Alford* nature of Alston's plea, but rather on the fact that the plea did not admit to facts supporting a "violent felony" ACCA enhancement. Similarly here, and notwithstanding the non-*Alford* nature of his plea, Karimi did not necessarily admit to facts constituting a crime of violence, nor did his conviction necessarily rest on such facts.

IV.

In sum, the Attorney General has failed to show by clear and convincing evidence that Karimi's assault conviction "necessarily rested on facts identifying his second-degree assault offense as a type of assault that qualifies" as a crime of violence. *Alston*, 611 F.3d at 224. Consequently, the Attorney General has not met his burden of proving Karimi's removability as an aggravated felon. We therefore grant Karimi's petition for review, vacate the BIA's order of removal, and remand to the BIA with instructions to reinstate Karimi's asylee status.

*PETITION FOR REVIEW GRANTED;*
*VACATED AND REMANDED WITH INSTRUCTIONS*

KING, Circuit Judge, dissenting:

With all respect for my good colleagues, I am not convinced that we should reach out and decide the issues addressed by the majority opinion. The Attorney General has moved for a remand of this matter to the BIA for further consideration, and we should simply grant that motion. Notwithstanding the tardiness of the remand request, the reasons spelled out by the Attorney General are valid. The BIA misapprehended the basis of Karimi's administrative appeal; thus, it should be given the opportunity to correct that error and provide us with a fully considered final decision. There is sufficient justification in the record for the BIA to rule in favor of the Attorney General on the merits, in which case Karimi would be no worse off, and we would likely have the benefit of the Supreme Court's decision in *Descamps* to inform our review. Or the BIA might rule in Karimi's favor, and the Attorney General could thereafter choose to let that ruling stand without appeal. In such an instance, we would be relieved of the obligation to render an unnecessary decision, and the judicial process would operate at its intended efficiency.

I respectfully dissent.