**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**May 23, 2012**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

TRACY DON CARTWRIGHT,

      Defendant-Appellant.

No. 11-5060

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**
**(D.C. No. 4:10-CR-00104-CVE-1)**

Barry L. Derryberry, Research & Writing Specialist (Julia L. O'Connell, Federal Public Defender, and Stephen J. Greubel, Assistant Federal Public Defender, with him on the brief), Tulsa, Oklahoma, for Defendant-Appellant.

Leena Alam, Assistant United States Attorney (Thomas Scott Woodward, United States Attorney, Joel-lyn A. McCormick, Assistant United States Attorney on the brief), Tulsa, Oklahoma, for Plaintiff-Appellee.

Before **TYMKOVICH**, **BALDOCK**, and **GORSUCH**, Circuit Judges.

**BALDOCK**, Circuit Judge.

Among other things, 18 U.S.C. § 922(g) prohibits a convicted felon from possessing ammunition. Meanwhile, the Armed Career Criminal Act (ACCA) mandates a 15-year minimum term of imprisonment for "a person who violates section 922(g) . . . and has three previous convictions . . . for a violent felony . . .

committed on occasions different from one another." Id. § 924(e)(1). The ACCA defines a "violent felony" in pertinent part as "any crime punishable by imprisonment for a term exceeding one year . . . that . . . is burglary . . . or otherwise involves conduct that presents a serious potential risk of physical injury to another." Id. § 924(e)(2)(B). A jury convicted Defendant Tracy Don Cartwright of being a felon in possession of ammunition in violation of 18 U.S.C. § 922(g)(1). The probation office prepared a Presentence Investigation Report (PSR) that classified Defendant, based on three prior Oklahoma burglary convictions, as an armed career criminal subject to a 15-year minimum sentence under the ACCA. Defendant objected to that classification, arguing two of the three identified crimes did not qualify as "burglary convictions" within the meaning of § 924. The district court overruled Defendant's objections to the PSR and sentenced him accordingly. Defendant appealed, asking us to decide two questions: (1) whether an Oklahoma second-degree burglary conviction based on entry into a building by an instrument capable of completing the intended crime qualifies as a "burglary" under the ACCA and, (2) whether a *nolo contendere* plea to another Oklahoma second-degree burglary conviction qualifies as a "conviction" under the ACCA. We exercise jurisdiction under 18 U.S.C. § 3742. We review de novo whether a defendant's prior conviction qualifies as a violent felony under the ACCA. United States v. Smith, 652 F.3d 1244, 1246 (10th Cir. 2011). Considering each question in turn, we affirm.

I.

Defendant first objected to the Government's use of a Wagoner County, Oklahoma conviction for second-degree burglary. In that case, the Government charged Defendant in an information, which stated in part that Defendant "did unlawfully, wilfully, and feloniously break and enter into a certain building . . . by breaking open the outer rear door of said building and entering without the consent of said owner, with the felonious intent to steal said property, to commit any felony[.]" In addition to the information, the Government provided the district court with the jury instructions from the Wagoner County case. Jury instruction 13 recited the elements of burglary. That instruction stated:

> No person may be convicted of burglary in the second degree unless the state has proved beyond a reasonable doubt each element of the crime. These elements are: first, breaking; second, entering; third, a building, structure; fourth, of another; fifth, in which property is kept; sixth, with the intent to [steal] [commit any felony].

(brackets in original). Jury instruction 14 provided the jury with a definition of "entering." That instruction stated in part:

> Entering - An entry which occurs when any part of a person's body is within the house. [However, if a tool or an instrument is used and inserted inside, without any part of the person being within the house, it is an entry if the insertion of the tool or instrument is capable of completing the purpose of the intended crime.]

(brackets in original). Defendant argued this instruction advised the jury that entry occurs not only where a person's body is within the building, but also where a tool or instrument is inserted inside that building without any physical entry by the

3

person. Defendant contended that burglary by a tool or instrument is not "burglary" under the ACCA, which disqualifies the Wagoner County conviction for purposes of the enhancement.

The district court issued an opinion overruling Defendant's objection to the PSR's characterization of his Wagoner County conviction as a burglary under the ACCA. The district court uncovered no cases addressing whether "burglary" under the ACCA contemplates personal entry only. The district court reasoned, however, that entry via tool or instrument would implicate the same concerns about safety as personal entry into a building or structure. The court concluded the potential exists for confrontation during the commission of a burglary whether a person enters the house through personal entry or by means of a tool or instrument. Moreover, the district court looked to our precedent and noted the charging language in the information in the Wagoner County case is nearly identical to that in other cases in which we have concluded the Government charged the essential elements of burglary under the ACCA.

A.

When Congress first passed the ACCA in 1984, the statute itself contained the following definition of burglary: "any felony consisting of entering or remaining surreptitiously within a building that is property of another with intent to engage in conduct constituting a Federal or State offense." 18 U.S.C. § 1202(c)(9) (repealed 1986). But Congress deleted the definition in 1986 when it amended the ACCA.

4

Because of that deletion, in Taylor v. United States, 495 U.S. 575 (1990), the Supreme Court determined the meaning of the word "burglary" as used in the ACCA. The Taylor court first turned to the legislative history of the statute and drew five important conclusions. First, the Court observed "throughout the history of the enhancement provision, Congress focused its efforts on career offenders—those who commit a large number of fairly serious crimes as their means of livelihood, and who, because they possess weapons, present at least a potential threat of harm to persons." Id. at 587–88. Second, the Court stated the legislative history "indicates that Congress singled out burglary (as opposed to other frequently committed property crimes such as larceny and auto theft) for inclusion as a predicate offense, both in 1984 and in 1986, because of its inherent potential for harms to persons." Id. at 588. Third, the Court opined that an offender's entry into a building "often creates the possibility of a violent confrontation between the offender and an occupant, caretaker, or some other person who comes to investigate." Id. Because of the seriousness of the offense, "[t]here was never any proposal to limit the predicate offense to some special subclass of burglaries . . ." Id. Fourth, the Supreme Court observed "Congress intended that the enhancement provision be triggered by crimes having certain specified elements, not by crimes that happened to be labeled 'robbery' or 'burglary' by the laws of the State of conviction." Id. at 588–89. Fifth, and finally, the Court stated "the 1984 definition of burglary shows that Congress, at least at that time, had in mind a modern 'generic' view of burglary,

roughly corresponding to the definitions of burglary in a majority of the States' criminal codes." Id. at 589. The Court stated Congress, in adopting the 1984 definition, "both prevented offenders from invoking the arcane technicalities of the common-law definition of burglary to evade the sentence-enhancement provision, and protected offenders from the unfairness of having enhancement depend upon the label employed by the State of conviction." Id.

After examining the legislative history, the Taylor Court analyzed "whether Congress intended 'burglary' to mean whatever the State of the defendant's prior conviction defines as burglary, or whether it intended that some uniform definition of burglary be applied to all cases in which the Government seeks a § 924(e) enhancement." Id. at 580. The Court quickly rejected the argument that "burglary" for purposes of the ACCA varied upon each individual state's definition of the term "burglary." Such a reading would create the bizarre result of a sentencing court deeming a person to have committed a "violent felony" based solely on whether an individual state labeled an offense as "burglary." Id. at 590–91. Thus, a person could commit a "burglary" in State A and have the conviction count toward enhancement under the ACCA while a different person could commit the same crime in State B, but not have the conviction count toward enhancement simply because State B did not name the offense "burglary."

Having concluded Congress intended a uniform definition of "burglary," the Court next analyzed whether Congress intended that definition to be "the traditional

6

common-law definition, or one of the broader 'generic' definitions articulated in the Model Penal Code and in a predecessor statute to § 924(e), or some other definition specifically tailored to the purposes of the enhancement statute[.]" Id. at 580 (footnote omitted). The Court first looked to the common-law definition of burglary. "Burglary was defined by the common law to be the breaking and entering of the dwelling house of another in the nighttime with the intent to commit a felony." Id. at 580 n.3 (quoting W. LaFave & A. Scott, Substantive Criminal Law § 8.13 (1986)). The Court rejected the common-law definition because most states had expanded the definition. Id. at 593. Because of the term's expansion, the Court concluded interpreting "burglary" to mean common-law burglary "would not comport with the purposes of the enhancement statute." Id. The Court stated members of Congress, "immersed in the intensely practical concerns of controlling violent crime, [unlikely] would have decided to abandon their modern, generic 1984 definition of burglary and revert to a definition developed in the ancient English law—a definition mentioned nowhere in the legislative history." Id. at 594.

Following its rejection of the common-law definition, the Court likewise disregarded the view that Congress meant to include only a special subclass of burglaries that involve especially dangerous conduct. Id. at 596–97. The Court believed neither the language of the statute nor the legislative history supported such an argument. "[I]f Congress had meant to include only an especially dangerous subclass of burglaries as predicate offenses," Congress would not have used the

unqualified language "*is* burglary . . . or otherwise involves conduct that presents a serious potential risk." Id. at 597 (quoting § 924(e)(2)(B)(ii) (emphases added in Taylor). The Court believed Congress' choice of language "indicate[d] that Congress thought ordinary burglaries, as well as burglaries involving some element making them especially dangerous, presented a sufficiently 'serious potential risk' to count toward enhancement." Id.

The Taylor Court finally settled on Congress' intent. "Congress meant by 'burglary' the generic sense in which the term is now used in the criminal codes of most States." Id. at 598. The Court then crafted a generic definition of burglary for purposes of enhancement under the ACCA: "an unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime." Id. This definition "*approximates* that adopted by the drafters of the Model Penal Code," which states, "[a] person is guilty of burglary if he enters a building or occupied structure, or separately secured or occupied portion thereof, with purpose to commit a crime therein, unless the premises are at the time open to the public or the actor is licensed or privileged to enter." Id. at 598 n.8 (quoting Model Penal Code § 221.1(1) (1980)) (emphasis added). As summarized by the Court, "there simply is no plausible alterative that Congress could have had in mind." Id. at 598.

B.

Before we address the merits of Defendant's first argument, we must determine what documents we may look to in answering whether Defendant's prior

8

offense in Wagoner County meets the definition of generic burglary. Defendant's previous conviction is for second-degree burglary. Oklahoma defines second-degree burglary as follows:

> Every person who breaks and enters any building or any part of any building, room, booth, tent, railroad car, automobile, truck, trailer, vessel or other structure or erection, in which any property is kept, or breaks into or forcibly opens, any coin operated or vending machine or device with intent to steal any property therein or to commit any felony, is guilty of burglary in the second degree.

21 Okla. Stat. § 1435.

We have held Oklahoma's definition of second-degree burglary is broader than generic burglary because it includes actions beyond the scope of generic burglary, such as breaking and entering into automobiles and vending machines. United States v. Hill, 53 F.3d 1151, 1153 (10th Cir. 1995) (en banc). The Supreme Court has stated that a sentencing court should usually apply a "categorical approach" that "limits the sentencing court's inquiry to determining whether the statutory definition of the prior offense satisfies the definition of violent felony." United States v. Ventura-Perez, 666 F.3d 670, 673 (10th Cir. 2012) (citing Shepard v. United States, 544 U.S. 13, 17 (2005)). But "[i]f a state statute on its face defines burglary more broadly than Taylor, then a conviction obtained under such a statute may not, except in narrowly defined circumstances, be counted toward enhancement." Hill, 53 F.3d at 1153 (internal quotation marks omitted). Because the second-degree burglary statute is broader than generic burglary, "Defendant's conviction under the

9

Oklahoma statute cannot as a categorical matter provide a basis for enhancement under the ACCA." Id. Where as here, the statute's language encompasses both generic burglary and more, "a modification to that approach is proper." Ventura-Perez, 666 F.3d at 673. This so-called "modified categorical approach" allows a court "to determine which statutory phrase was the basis for the conviction by consulting the trial record—including charging documents, plea agreements, transcripts of plea colloquies, findings of fact and conclusions of law from a bench trial, and jury instructions and verdict forms." Johnson v. United States, 130 S. Ct. 1265, 1273 (2010).

In this case, the Government produced not only the charging document from the Wagoner County case, but also the jury instructions. Although the charging document in the Wagoner County case states the elements of generic burglary, jury instruction 14 states in part: "if a tool or an instrument is used and inserted inside, without any part of the person being within the house, it is an entry if the insertion of the tool or instrument is capable of completing the purpose of the intended crime."[1] Defendant asserts Taylor's generic definition of burglary contemplates a personal, physical bodily breaking and entering. And Defendant contends the jury instruction shows that the jury could have convicted him of burglary based on an

---

[1] We have stated that jury instructions are not required where the court can determine from the charging document and judgment that a defendant was convicted of generic burglary. United States v. Lujan, 9 F.3d 890, 892 (10th Cir. 1993). But here, the Government produced jury instruction 14 and we will not ignore it.

10

entry by tool, rather than a physical, personal entry. Moreover, Defendant maintains that the Supreme Court's definition of entry does not encompass "tool" or "instrument" and that only the Supreme Court can alter or expand the generic definition of burglary. In other words, Defendant argues that jury instruction 14 proves that a jury convicted him of a crime broader than generic burglary.

We disagree. <u>Taylor</u>'s generic definition does not require a physical, bodily entry into a building or structure. At oral argument, Defendant asserted that because the <u>Taylor</u> Court modeled generic burglary after the MPC definition of the term, we must look to the wording of the MPC definition. According to Defendant, the MPC drafter's usage of "he" evidences the drafter's intent to exclude any common-law notion of entry by tool. But, aside from the fact that the Supreme Court did not adopt the MPC definition of burglary as its own, the comment to § 221.1 on "unprivileged entry" reveals a different intent: "Subsection (1) [of § 221.1] *retains the core of the common-law conception*." Model Penal Code § 221.1 cmt. 3(a) (1980) (emphasis added). To discover "the core of the common-law conception," we look to the same treatise the Supreme Court cited in <u>Taylor</u>. As to common law "entry," "[i]f the actor . . . used some instrument which protruded into the structure, no entry occurred unless he was simultaneously using the instrument to achieve his felonious purpose." LaFave & Scott, § 8.13(b). Accordingly, under the common-law, no entry occurred where a person used an instrument to open a building, "*but if the actor was also using the instrument to reach some property therein, then it*

11

*constituted an entry*." Id. (emphasis added). This definition is consistent with jury instruction 14, which requires an actual intrusion into the home with the tool and that the tool be capable of completing the purpose of the crime.

Because common-law entry included "entry by tool" as contemplated by jury instruction 14, we now turn to whether the MPC sought to exclude entry by tool from its definition of burglary. The MPC sought to exclude from burglary situations involving "no surreptitious intrusion." MPC § 221.1 cmt. 3(a) (1980). An example of such a situation occurs where a servant enters his employer's house as he normally is privileged to do, with the intent on the occasion to steal some silver. Id. Another change from the common law is the inclusion of language to encompass one who unlawfully remains upon property. The MPC comment provides two reasons for this change. "The first is that the fact of lawful entry does not necessarily foreclose the kind of intrusion that burglary is designed to reach." Id. An example of this situation is a customer who enters a bank during operating hours, hides until after closing, and then undertakes his criminal activity. Id. "The second reason for covering unlawful remaining relates to an unnecessary complexity that a prosecutor may face when an intruder is discovered upon premises that were open to him lawfully not long before the discovery." Id. The drafters of the MPC used the word "entry," which they understood to encompass entry by tool. Nothing in the comments evidences any intent to remove the common-law notion of entry by tool from the definition of "entry."

12

Similarly, when the Supreme Court issued <u>Taylor</u>, "entry" included situations where a person used a tool or an instrument to achieve his felonious purpose. LaFave & Scott, § 8.13(b). No language in <u>Taylor</u> indicates the Supreme Court sought to exclude entry by tool from the definition of "entry." As discussed above, the Supreme Court rejected the common-law definition of burglary in defining the term as used in the ACCA because "construing 'burglary' to mean common-law burglary would come close to nullifying that term's effect in the statute, because few of the crimes now generally recognized as burglaries would fall within the common-law definition." <u>Taylor</u>, 495 U.S. at 594. According to the Supreme Court, members of Congress were "immersed in the intensely practical concerns of controlling violent crime." <u>Id.</u> Not including entry by tool within the definition of "entry" would thwart Congress' purpose in naming burglary as a predicate offense because of burglary's "inherent potential for harm to persons." <u>Id.</u> at 588. Defendant's argument that we are altering or expanding the definition of "entry" is incorrect. Rather, the opposite is true. If we were to remove entry by tool from the definition of "entry," we would then alter or contract the Supreme Court's definition.[2]

---

[2] Defendant further asserts that <u>Taylor</u> was concerned with the "modern consensus of burglary," and not safety. As mentioned above, the Supreme Court expressly stated Congress included burglary as a predicate offense because of its "inherent potential for harm to persons." <u>Taylor</u>, 495 U.S. at 588. The Supreme Court has subsequently stated:

The main risk of burglary arises not from the simple physical act of
(continued...)

13

We hold the Supreme Court's definition of generic burglary for purposes of the ACCA encompasses "entry by a tool or an instrument" as stated in jury instruction 14. This holding is neither an expansion nor an alteration of the generic definition for the reasons stated above. Accordingly, Defendant's prior conviction in the Wagoner County case constitutes a burglary within the meaning of the ACCA.

## II.

We now turn to Defendant's second challenge to his sentence enhancement; the use of a second-degree burglary conviction in Tulsa County, Oklahoma to which Defendant plead *nolo contendere*. The information stated in part that Defendant "did commit the crime of burglary, second degree . . . by unlawfully, feloniously, willfully and burglariously, break and enter into a certain residence . . . by breaking in the front door of said residence and entering without the consent of said owner,

---

[2](...continued)
wrongfully entering onto another's property, but rather from the possibility of a face-to-face confrontation between the burglar and a third party—whether an occupant, a police officer, or a bystander—who comes to investigate. That is, the risk arises not from the completion of the burglary, but from the possibility that an innocent person might appear while the crime is in progress.

United States v. James, 550 U.S. 192, 203 (2007). This "main risk of burglary," the "face-to-face confrontation between the burglar and a third party," exists whether the burglary includes personal, physical entry or entry by tool. For example, a person could break a first floor bedroom window, use a tool or instrument to slide a dresser toward the window, and use that same tool to steal a watch sitting on that dresser. A face-to-face confrontation could still occur with an occupant of the home, a police officer, or a bystander, even though the person committing the burglary did not physically enter the house.

14

with the willful, felonious and burglarious intent to steal said property." (bold and capitalization omitted). Defendant asserted no documents presented to the district court established that the *nolo contendere* plea necessarily admitted the elements of burglary. And more importantly, Defendant argued the *nolo contendere* plea did not admit the elements alleged in the information because, by the plea's very nature, it merely asserted Defendant did not contest the charge. Defendant therefore argued that because a *nolo contendere* plea does not expressly admit guilt, his conviction should not count for purposes of a sentence enhancement under the ACCA.

The district court concluded that even though the Judgment Order did not reference the charging document, Defendant admitted all the well-pleaded facts in the information by pleading guilty. The district court stated Defendant's argument ignored the realities of a *nolo contendere* plea because a no contest plea in Oklahoma admits the facts pleaded in the information. Moreover, the district court believed the information in the Tulsa County case set forth the essential elements of a burglary under the ACCA. The court concluded, based on state records, Defendant was convicted of a burglary for purposes of the ACCA and his conviction was properly characterized as a "violent felony."

Under the modified categorical approach, we may look to the charging document, Judgment Order and the "Findings of Fact - Acceptance of Plea" form. Defendant concedes the information in the Tulsa County burglary described a generic burglary in its allegation of "breaking in the front door of said residence and entering

15

without the consent of said owner, with the willful, felonious and burglarious intent to steal said property . . . ."  Nevertheless, Defendant argues an information only *alleges*, and language within the Judgment Order does not reflect back upon the information.  Specifically, the Tulsa County Judgment Order stated "defendant has entered a plea of nolo contendere and is found guilty by the Court of the crime of burglary - second degree . . . ." (capitalization omitted).  Defendant also argues the "Findings of Fact - Acceptance of Plea" form fails to confirm that the *nolo contendere* plea necessarily admitted generic burglary.  Thus, Defendant asserts these documents did not establish by a preponderance of the evidence that his *nolo contendere* plea necessarily admitted the elements of generic burglary.

In the district court, Defendant relied on our decision in United States v. Bennett, 108 F.3d 1315 (10th Cir. 1997), for the proposition that merely being charged with a crime of violence is not dispositive for sentencing purposes. Defendant argued, even though the information charges him with generic burglary, the Government must provide another document to prove he actually pled guilty to each element of generic burglary alleged in the information.  In Bennett, the information charged the defendant with first-degree burglary for breaking into a dwelling, which undisputedly alleged a crime of violence. Id. at 1317.  Bennett, however, later pled to the lesser offense of second-degree burglary. Id.  The record before us in Bennett did not indicate how the Government amended the wording of the information when it reduced Bennett's charge from first-degree to second-degree

16

burglary. Id. Because we could not determine whether the Government deleted the word "dwelling," we concluded the Government had not met its burden of proving the second-degree burglary conviction was a crime of violence. Id. at 1318. Bennett does not require reversal in the present case. In this case, the information charged second-degree burglary and Defendant pled *nolo contendere* to an offense, which Defendant acknowledges meets the definition of generic burglary under the ACCA. Together, the charging document and the verdict necessarily show the requisite elements of generic burglary are met for the Tulsa County conviction. See United States v. Lujan, 9 F.3d 890, 892 (10th Cir. 1993) (concluding no other documents are required where the charging document and the verdict necessarily show the requisite elements of burglary).

Apart from Bennett, Defendant argues on appeal that a *nolo contendere* plea in itself cannot be used to enhance his sentence. Because Defendant entered his *nolo contendere* plea in Oklahoma, we must examine the effect of a *nolo contendere* plea in that state. See United States v. De Jesus Ventura, 565 F.3d 870, 879 (D.C. Cir. 2009) (using Virginia law to determine the effect of a *nolo contendere* plea entered in Virginia). In Oklahoma, a *nolo contendere* plea "has the same legal effect as a guilty plea except that it may not be used against the defendant as an admission in any civil suit based on the act upon which the criminal prosecution is based." Morgan v. State, 744 P.2d 1280, 1281 (Okla. Crim. App. 1987). Because, in Oklahoma, "a plea of nolo contendere is the functional equivalent of a plea of

17

guilty," Burnham v. State, 43 P.3d 387, 389 n.1 (Okla. Crim. App. 2002), a plea of no contest admits the facts pleaded in the information. See Lozoya v. State, 932 P.2d 22, 30 (Okla. Crim. App. 1996) (stating that a guilty plea "admits the facts pleaded in the information"); see also Delong v. State ex rel. Okla. Dept. of Pub. Safety, 956 P.2d 937, 939 (Okla. Civ. App. 1998) (stating that *nolo contendere* pleas in Oklahoma "admit the validity of those charges").

Having determined a *nolo contendere* plea in Oklahoma admits the validity of the charge, we next consider whether the Government properly used Defendant's plea of *nolo contendere* in the Tulsa County case as a "previous conviction" within the meaning of the ACCA. Supreme Court precedent "prevents sentencing courts from assessing whether a prior conviction counts as an ACCA predicate conviction by relying on facts neither inherent in the conviction nor admitted by the defendant."[3] United States v. Alston, 611 F.3d 219, 226 (4th Cir. 2010). But even

---

[3] We have held that a *nolo contendere* plea to burglary establishes that, insofar as the United States Sentencing Guidelines (USSG) are concerned, a defendant is convicted of violating a burglary statute. United States v. Garcia, 42 F.3d 573, 577 (10th Cir. 1994). "Because of the similarity in language between the ACCA and the USSG, we have occasionally looked to precedent under one provision for guidance under another in determining whether a conviction qualifies as a violent felony." United States v. Hernandez, 568 F.3d 827, 830 n.3 (10th Cir. 2009). But we cannot apply that principle here. Although the circuits uniformly hold a *nolo contendere* plea is the equivalent of a guilty plea for the Guidelines' career offender provision, the same is not true for the ACCA. Compare United States v. King, 673 F.3d 274, 283 (4th Cir. 2012) (holding a sentence imposed as a result of an Alford plea qualified as a "prior sentence" for purposes of the Guidelines because the conviction *itself* is the relevant determination), with United States v. Alston, 611 F.3d 219, 226

(continued...)

18

though we may not rely on facts neither inherent in the conviction nor admitted by the defendant, the Government may use a *nolo contendere* plea as a "previous conviction" of a "violent felony."  Where a defendant entered into a *nolo contendere* plea and did not confirm the factual basis for his plea, "the sole issue is whether the government has shown that the charge was narrowed to include only predicate conduct."[4]  United States v. Savage, 542 F.3d 959, 966 (2d.Cir. 2008).  In this case,

---

[3](...continued)
(4th Cir. 2010) (concluding that a prosecutor's proffer of the factual basis for an Alford plea does not satisfy the requirements of the modified categorical approach because the defendant does not admit guilt or admit or accept the facts proffered by the prosecutor); but see United States v. Salean, 583 F.3d 1059, 1061 n.3 (8th Cir. 2009) ("Alford pleas are indistinguishable from other guilty pleas for purposes of § 924(e)(2)(B)").  Unlike the ACCA, under the USSG, we are not required to determine the factual basis of a defendant's prior conviction.  King, 673 F3d at 283.  "An 'Alford' plea, named after the Supreme Court's decision in North Carolina v. Alford, [400 U.S. 25 (1970),] is a plea denominated as a guilty plea but accompanied by protestations of innocence.  Courts determining whether to accept Alford pleas are to treat them as pleas of nolo contendere."  United States v. Buonocore, 416 F.3d 1124, 1127 n.2 (10th Cir. 2005) (citing Fed. R. Crim. P. 11 advisory committee's note) (internal citation omitted).

[4]  See also Alston, 611 F.3d at 226 ("[O]nly when the underlying charging document narrows the charge to a crime that amounts to a predicate offense . . . may a sentencing court . . . enhance the defendant's sentence without running afoul of the Sixth Amendment."); United States v. McMurray, 653 F.3d 367, 381 (6th Cir. 2011) ("Convictions based on Alford-type pleas can be predicate convictions under the ACCA if the qualifying crime is inherent in the fact of the prior conviction—i.e., if . . . the Shepard documents demonstrate with certainty that the defendant pleaded guilty to a narrowed charge that would qualify as a 'violent felony.'"); United States v. Day, 465 F.3d 1262, 1266 (11th Cir. 2006) ("[A] district court may not rely on a charging document without first establishing that the crime charged was the same crime for which the defendant was convicted." (internal quotation marks omitted)); United States v. De Jesus Ventura, 565 F.3d 870, 879 (D.C. Cir. 2009) (concluding in the case of a *nolo contendere* plea, the information must allow the court to say
(continued...)

19

the state "narrowed" the charge to include only predicate conduct because the charging document did not charge Defendant with an offense broader than generic burglary. Moreover, Defendant admits that the charging document in the Tulsa County conviction is a charge of generic burglary for purposes of the ACCA. Accordingly, Defendant's *nolo contendere* plea entered pursuant to the Tulsa County charge constitutes a predicate offense. The Government has therefore met its burden of showing, by a preponderance of the evidence, Defendant's prior Tulsa County conviction constitutes a "violent felony."

Because the Government has shown Defendant has three prior violent felony convictions for purposes of the ACCA, the decision of the district court is AFFIRMED.

---

[4](...continued)
with the requisite certainty that a defendant was necessarily convicted of the elements of the generic crime).