**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 10-5296

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

THOMAS ROYAL,

Defendant – Appellant.

Appeal from the United States District Court for the District of Maryland, at Baltimore. Richard D. Bennett, District Judge. (1:09-cr-00439-RDB-1)

Argued: October 26, 2012                Decided: October 1, 2013

Before TRAXLER, Chief Judge, DIAZ, Circuit Judge, and Catherine C. EAGLES, United States District Judge for the Middle District of North Carolina, sitting by designation.

Affirmed in part, vacated in part, and remanded by published opinion. Judge Diaz wrote the opinion, in which Chief Judge Traxler and Judge Eagles joined.

**ARGUED:** James Christopher Fraser, VENABLE, LLP, Baltimore, Maryland, for Appellant. John Walter Sippel, Jr., OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee. **ON BRIEF:** James Wyda, Federal Public Defender, Baltimore, Maryland, Paresh S. Patel, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Greenbelt, Maryland, for Appellant. Rod J. Rosenstein, United States Attorney, Baltimore, Maryland, for Appellee.

DIAZ, Circuit Judge:

Thomas Royal was convicted by a jury of unlawfully possessing ammunition after being previously convicted of a crime punishable by imprisonment for a term exceeding one year, in violation of 18 U.S.C. § 922(g)(1). At sentencing, the district court determined that Royal was an armed career criminal under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), triggering a fifteen-year mandatory minimum sentence. The court sentenced him to 188 months' imprisonment.

Royal advances three arguments on appeal. First, he contends the government failed to present sufficient evidence to convict him of knowingly possessing "ammunition," arguing that since the rounds he possessed were loaded in an antique firearm, the government had a burden to show that the rounds were actually designed for use in a non-antique firearm. Second, Royal asserts that the district court committed plain error when it instructed the jury that the phrase "knowingly possessed ammunition" meant that Royal knew the rounds were "ammunition as we commonly use the word." Finally, Royal argues that the district court reversibly erred by using the modified categorical approach to determine that his prior conviction under Maryland's second-degree assault statute constituted a predicate conviction under the ACCA. We conclude that sufficient evidence supported the jury's verdict and that the

2

district court did not err in its jury instructions. However, in light of the Supreme Court's recent holding in Descamps v. United States, 133 S. Ct. 2276 (2013), we sustain Royal's challenge to the district court's application of the modified categorical approach and its imposition of the ACCA sentencing enhancement. Accordingly, we affirm in part, vacate in part, and remand for resentencing.

## I.

On appeal from a criminal conviction, we view the evidence in the light most favorable to the government. United States v. Herder, 594 F.3d 352, 358 (4th Cir. 2010).

## A.

On January 8, 2009, Sergeant Jones and Detective Rayam of the Baltimore, Maryland Police Department stopped Thomas Royal for driving with an expired registration plate. During the stop, Detective Rayam observed Royal place his hand in his front left jacket pocket, where Rayam noticed a bulge. Suspecting criminal activity, the officers asked if they could search the car. After initially consenting to the search, Royal grew agitated and attempted to push his way past Detective Rayam. Sergeant Jones used his Taser device to subdue him, and a subsequent search of Royal's person revealed an antique Iver Johnson revolver loaded with five .32 caliber rounds.

3

Since Royal had previously been convicted of second-degree assault, "a crime punishable by imprisonment for a term exceeding one year," the federal Gun Control Act ("GCA") prohibited him from knowingly possessing "any firearm or ammunition" that has traveled in interstate commerce. 18 U.S.C. § 922(g)(1). "Firearm" and "ammunition" are defined terms under the GCA. As is relevant here, the term "firearm" explicitly "does not include an antique firearm," which is any firearm "manufactured in or before 1898." Id. § 921(a)(3), (a)(16)(A). "The term 'ammunition' means ammunition . . . designed for use in any firearm." Id. § 921(a)(17)(A).

Royal was charged in a one-count indictment for possession of ammunition by a prohibited person, in violation of GCA § 922(g)(1). At trial, the government called Special Agent David Collier of the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") as "an expert in identification of firearms and ammunition" and the "interstate nexus of firearms and ammunition."

Collier testified that Royal's revolver had been manufactured in 1895 and therefore, for the purposes of the GCA, was an "antique firearm," which is not a "firearm." Collier also testified that the rounds had been manufactured outside Maryland and had traveled in interstate commerce. He gave no

4

testimony about whether Royal's rounds had been "designed for use in any firearm" such that they technically fell within the statute's definition of "ammunition," but conceded on cross-examination that he did not know the dates of the rounds' manufacture.

The evidence showed that the rounds were .32 caliber, and manufactured by the arms companies Remington and Winchester. The rounds themselves were also entered into evidence and published to the jury. The government presented no specific evidence as to the rounds' design. Nor, aside from cross-examining Collier about the rounds' manufacture dates, did Royal himself raise any issues concerning the design of the ammunition.

At the close of the government's case, Royal moved under Fed. R. Crim. P. 29 for a judgment of acquittal, arguing that the government had presented insufficient evidence to support a guilty verdict. The district court denied the motion. Royal advanced no defense but renewed his Rule 29 motion, which the court again denied.

After closing arguments, the district court instructed the jury that the government needed to prove that Royal knowingly possessed one or more pieces of ammunition. It read them the GCA's statutory definition of ammunition: "'Ammunition' is ammunition or cartridge cases, primers, bullets, or propellant

5

powder designed for use in any firearm," J.A. 148. With respect to the mens rea component, the district court instructed the jury, without objection from Royal, that "whether the defendant acted knowingly . . . means [whether] he knew that the ammunition was ammunition as we commonly use the word." The jury returned a guilty verdict on the sole count.

A conviction for being a felon in possession of a firearm or ammunition normally carries a maximum penalty of ten years in prison. 18 U.S.C. § 924(a)(2). However, at Royal's sentencing, the government argued that he was subject to a fifteen-year mandatory minimum sentence because he had three prior convictions "for a violent felony or serious drug offense," id. § 924(e)(1), including a 2007 guilty plea to Maryland second-degree assault. Royal argued that under the categorical approach, this conviction did not qualify as a "violent felony" because "violent force" is not categorically required for a conviction under Maryland's second-degree assault statute. The district court rejected this argument and, following our decision in United States v. Alston, 611 F.3d 219 (4th Cir. 2010), applied the so-called modified categorical approach to conclude that, based on facts admitted in his plea colloquy, Royal's 2007 second-degree assault conviction was indeed a violent felony. The district court thus applied the ACCA § 924(e)(1) enhancement and sentenced Royal to fifteen years and

6

eight months in prison. Royal timely appealed. Following oral argument, we placed the case in abeyance pending the Supreme Court's decision in Descamps, which issued in June 2013.

## II.

The issues before us are (1) whether Royal was entitled to a Rule 29 judgment of acquittal due to insufficient evidence; (2) whether the district court committed plain error when it instructed the jury that the phrase "knowingly possessed ammunition" meant "[Royal] knew the ammunition was ammunition as we commonly use the word"; and (3) whether the district court erred in applying the modified categorical approach to determine that Royal's 2007 Maryland second-degree assault conviction qualified as a predicate "violent felony" under the ACCA.

### A.

We first consider Royal's argument that he was entitled to a judgment of acquittal because the government offered insufficient evidence to support his conviction. We review de novo the district court's decision to deny a defendant's Rule 29 motion for judgment of acquittal. United States v. Smith, 451 F.3d 209, 216 (4th Cir. 2006). On an appeal challenging the sufficiency of evidence, we assess the evidence in the light most favorable to the government, and the jury's verdict must stand unless we determine that no rational trier of fact could

7

have found the essential elements of the crime beyond a reasonable doubt. United States v. Young, 609 F.3d 348, 355 (4th Cir. 2010).

In order to prove that Royal possessed ammunition in violation of the GCA, the government was required to prove beyond a reasonable doubt that (1) Royal was a convicted felon; (2) he knowingly possessed ammunition; and (3) the ammunition had traveled in interstate commerce. See United States v. Moye, 454 F.3d 390, 395 (4th Cir. 2006). Royal challenges the sufficiency of the government's evidence as to only the second prong, insisting that the government failed to show that the five rounds found in his revolver were "ammunition" within the statute's definition. Specifically, he argues that the government never met its burden of proving beyond a reasonable doubt that the rounds were "designed for use in any firearm"; that is, the government never showed that the rounds were designed for use in any non-antique firearm. One of our sister circuits has helpfully articulated this distinction:

> Bullets are "ammunition" if they are "designed for use in any firearm." 18 U.S.C. § 921(a)(17)([A]) (emphasis added). If these bullets had been designed exclusively for use in [defendant's antique] revolver, they would not be "ammunition" because by definition this antique revolver is not a "firearm." On the other hand, if the bullets were designed for use, not just in this antique revolver, but in other guns manufactured after 1898, then it would appear, given the literal language of the definition, that they are

8

"ammunition" because they would be designed for <u>any</u> firearm.

<u>United States v. Mixon</u>, 457 F.3d 615, 618 (7th Cir. 2006).

The government does not contest this literal reading of the statute. Rather, it posits that its burden of proof did not entail a need to demonstrate that the rounds were designed for use in a non-antique firearm. Instead, it argues that whether the ammunition was designed exclusively for use in an antique firearm is an affirmative defense that must be raised by the defendant and supported by evidence before the government must disprove its application.

To support this theory, the government cites numerous cases holding that the "antique firearm exception" in 18 U.S.C. § 921(a)(3) is an affirmative defense that the defendant bears the burden of raising. Because the antique firearm exception is an affirmative defense to a § 922(g) firearm charge, the government insists, it follows that a claim that ammunition was designed for use in a non-antique firearm is also an affirmative defense, which Royal failed to raise.

We accept Royal's literal reading of the statute and agree that rounds designed for use exclusively in antique firearms do not meet the GCA's definition of "ammunition." However, we also agree with the government that the antique firearms exception is an affirmative defense, which Royal failed to raise.

9

It is well established that the antique firearm exception is an affirmative defense to a firearm charge under § 922(g). See, e.g., United States v. McMillan, 346 F. App'x 945, 947 (4th Cir. 2009) (unpublished); United States v. Lawrence, 349 F.3d 109, 122 (3d Cir. 2003) ("Every circuit court of appeals that has considered this issue has agreed that [the antique firearm exception] is an affirmative defense that must initially be raised by sufficient evidence to justify shifting a burden of proof to the government."); United States v. Mayo, 705 F.2d 62, 75 (2d Cir. 1983) ("We find no indication in the language of the statute that Congress intended the government to prove in all criminal prosecutions under 18 U.S.C. § 922 that the illegal firearms transactions involved weapons that were not antiques."). This owes to the longstanding principle that "an indictment or other pleading founded on a general provision defining the elements of an offense . . . need not negative the matter of an exception made by a proviso or other distinct clause . . . . [I]t is incumbent on one who relies on such an exception to set it up and establish it." McKelvey v. United States, 260 U.S. 353, 357 (1922). Accordingly, since § 921(a)(3) clearly sets apart the antique firearm exception as a distinct proviso to the general definition of "firearm," courts have not hesitated to place the burden on defendants to

10

raise it as an affirmative defense.  We agree with this broadly held view.

Unlike § 921(a)(3)'s antique firearm exception, which stands alone as a separate sentence untethered to the general definition of "firearm," the "designed for use in any firearm" language of § 921(a)(17)(A)'s definition of "ammunition" is part and parcel of the definitional sentence.  Consequently, it is the government's initial burden to prove as an element of the offense that the rounds were "designed for use in any firearm." We are not persuaded, however, that that burden somehow incorporates the antique firearms exception, thereby requiring the government to initially come forth with proof that the ammunition was <u>not</u> designed <u>exclusively</u> for use in antique firearms.  Instead, if a defendant seeks the shelter of the antique firearms exception as it relates to § 921(a)(17)(A)'s "designed for use" clause, it remains incumbent on him to raise the exception as an affirmative defense at trial.

This Royal failed to do.  Although he is correct that a defendant need only produce "more than a scintilla of evidence" to raise an affirmative defense, <u>United States v. Sligh</u>, 142 F.3d 761, 762 (4th Cir. 1998), and that an affirmative defense may be raised by the testimony of the government's own witnesses, <u>see</u> <u>Sherman v. United States</u>, 356 U.S. 369, 373 (1958), Royal fails to satisfy even this minimal burden.

11

Special Agent Collier's testimony that the rounds were found in an antique revolver and that he did not know the dates of their manufacture constituted the full extent of the evidence on this issue. This evidence, we conclude, was too attenuated to sufficiently raise the defense. Although the ammunition was found loaded in an antique revolver, the mere fact that the ammunition happened to fit in an antique firearm does not mean it was designed for antique firearms. Cf. Mixon, 457 F.3d at 618 ("It is true that the bullets were in the cylinder [of an antique revolver], but that simple fact hardly establishes as a matter of law that they were designed for, and could be safely used, in this weapon."). Royal, meanwhile, offered no testimony or evidence on the rounds' design and never asserted at trial that the ammunition was not designed for use in a modern firearm. Accordingly, because the jury ultimately did not hear even a scintilla of evidence to suggest that the rounds were designed for use exclusively in an antique firearm, Royal was not entitled to have it consider the issue as an affirmative defense.

Meanwhile, although the government did not present evidence specifically going to the ammunition's design, the evidence was still sufficient to establish that the ammunition was "designed for use in any firearm." The evidence showed that the ammunition was .32 caliber, manufactured by Remington and

12

Winchester, and the ammunition itself was shown to the jury. Since most people are familiar with the appearance of modern ammunition, we find that the jury could reasonably have concluded that .32 caliber rounds manufactured by well-known firearms companies were "designed for use in any firearm."

As the district court correctly noted, the government's evidence satisfied all three elements of the § 922(g)(1) violation. We therefore hold that sufficient evidence supported Royal's conviction.

B.

We next address Royal's challenge to the district court's jury instructions. Since Royal did not object to the instructions, we review for plain error. United States v. Robinson, 627 F.3d 941, 953-54 (4th Cir. 2010). Under this standard, Royal "must establish that the district court erred, that the error was plain, and that it affected his substantial rights." Id. at 954 (internal quotation marks omitted).

Royal asserts that the district court plainly erred when it instructed the jury that the phrase "knowingly possessed ammunition" meant that Royal "knew the ammunition was ammunition as we commonly use the word." He relies on United States v. Tomlinson, where we held that to sustain a conviction, a district court must instruct the jury that the defendant must have had "knowledge of those facts that bring the firearm within

13

[the] legal definition" prohibited by the GCA. 67 F.3d 508, 514 (4th Cir. 1995). Here, Royal insists the district court ran afoul of Tomlinson when it failed to instruct the jury that the government needed to prove that Royal knew the rounds were "ammunition" within the GCA's definition, and specifically that Royal knew the rounds were designed for use in a non-antique firearm.

We disagree. In light of our first holding, we find no error, plain or otherwise, in the district court's instructions on the "knowing possession of ammunition" element of the offense. The district court properly instructed the jury as to the statutory definition of the word ammunition. And we are satisfied that the instructions adequately informed the jury that, to sustain a conviction, Royal needed to have knowledge of those facts that brought the rounds in this case within that legal definition. See United States v. Frazier-El, 204 F.3d 553, 561 (4th Cir. 2000) ("The conventional mens rea of criminal statutes . . . requires not that a defendant know that his conduct was illegal, but only that he 'know the facts that make his conduct illegal.'" (quoting Staples v. United States, 511 U.S. 600, 605 (1994))). As we have already explained, evidence that the rounds were designed exclusively for use in an antique firearm is not required to prove an element of the offense, but rather provides an affirmative defense. Because the matter of

14

the rounds' design was not in issue on the facts presented, the district court did not err, plainly or otherwise, by failing to mention it in its jury instructions.

C.

Finally, we address Royal's challenge to the district court's use of the modified categorical approach and its determination that his 2007 Maryland second-degree assault conviction qualified as a violent felony under the ACCA, 18 U.S.C. § 924(e)(1). We review this determination de novo. United States v. Harcum, 587 F.3d 219, 222 (4th Cir. 2009).

In Descamps, the Supreme Court recently clarified whether courts may apply the modified categorical approach to assess, for ACCA sentencing enhancement purposes, the violent nature of a defendant's prior conviction under an indivisible criminal statute (i.e., one that does not set out elements of the offense in the alternative, but which may nevertheless broadly criminalize qualitatively different categories of conduct). Answering that question in the negative, the Court explained that the modified categorical approach "serves a limited function: It helps effectuate the categorical analysis when a divisible statute, listing potential offense elements in the alternative, renders opaque which element played a part in the defendant's conviction." Descamps, 133 S. Ct. at 2283.

15

In this case, Royal's 2007 Maryland second-degree assault conviction is predicated on a facially indivisible statute.[1] Nevertheless, the government has argued elsewhere that authoritative judicial decisions have, in effect, converted Maryland's second-degree assault statute from indivisible to divisible, because the Maryland courts have held that the completed battery form of second-degree assault may consist of either "offensive physical contact" or infliction of "physical harm." Supp. Br. of Appellee at 18-19, United States v. Barillas, No. 11-5141 (4th Cir. Aug. 28, 2013), ECF No. 42 (quoting Nicolas v. State, 44 A.3d 396, 402 (Md. 2012)). Because an assault involving "physical harm" would qualify as a violent felony for sentencing purposes, the argument goes, courts may continue to apply the modified categorical approach to Maryland second-degree assault convictions, in order to determine whether the defendant's conviction was in fact for the "physical harm" variety of the offense. Id. at 21.

In addressing this argument, we acknowledge that the Supreme Court in Descamps "reserve[d] the question whether, in determining a crime's elements, a sentencing court should take

---

[1] Maryland's statute prohibiting second-degree assault provides simply that "[a] person may not commit an assault." Md. Code, Crim. Law § 3-203(a). "Assault" encompasses "the crimes of assault, battery, and assault and battery, which retain their judicially determined meanings." Id. § 3-201(b).

16

account not only of the relevant statute's text, but of judicial rulings interpreting it." 133 S. Ct. at 2291. We need not resolve that question here, however, because regardless of whether judicial decisions might in theory turn an indivisible statute into a divisible one, that is simply not what the Maryland courts have done with respect to the completed battery form of second-degree assault.

As the Court explained in Descamps, offenses are divisible when they consist of alternative elements through which the offense may be proved. Id. at 2283. By "elements," the Court meant factual circumstances of the offense that the jury must find "unanimously and beyond a reasonable doubt." Id. at 2288 (citing Richardson v. United States, 526 U.S. 813, 817 (1999)). Thus, to decide whether "offensive physical contact" and "physical harm" are alternative elements of the completed battery form of second-degree assault, we consider how Maryland courts generally instruct juries with respect to that offense.

To convict a defendant of an assault of the battery variety under Maryland law, "the State must prove that: (1) the defendant caused offensive physical contact with, or harm to, the victim; (2) the contact was the result of an intentional or reckless act of the defendant and was not accidental; and (3) the contact was not consented to by the victim or was not legally justified." Nicolas, 44 A.3d at 407 (quoting,

17

favorably, trial court jury instructions). Maryland juries are not instructed that they must agree "unanimously and beyond a reasonable doubt" on whether the defendant caused "offensive physical contact" or "physical harm" to the victim; rather, it is enough that each juror agree only that one of the two occurred, without settling on which. See also Robinson v. State, 58 A.3d 514, 528, 531 (Md. Ct. Spec. App. 2012) (quoting instruction requiring jury to find, among other elements, "that the defendant caused offensive physical contact with or physical harm to [the victim]," and describing that instruction as "mirror[ing] the pattern jury instruction for second degree assault").

Rather than alternative elements, then, "offensive physical contact" and "physical harm" are merely alternative means of satisfying a single element of the Maryland offense. Consequently, because "[t]he dispute here does not concern any list of alternative elements," the modified approach "has no role to play." Descamps, 133 S. Ct. at 2285.

Instead, we must apply the traditional categorical approach, under which we look "only to the statutory definition of the state crime and the fact of conviction to determine whether the conduct criminalized by the statute, including the most innocent conduct, qualifies as a 'crime of violence.'" United States v. Torres-Miguel, 701 F.3d 165, 167 (4th Cir.

18

2012) (internal quotation marks omitted). And because, "as we have repeatedly observed," Maryland's second-degree assault statute reaches any unlawful touching, whether violent or nonviolent and no matter how slight, "convictions under the statute, including [Royal's], cannot categorically be crimes of violence." Karimi v. Holder, 715 F.3d 561, 568 (4th Cir. 2013). Accordingly, Royal's 2007 Maryland second-degree assault conviction does not constitute a predicate "violent felony" supporting a sentencing enhancement under ACCA § 924(e)(1). Cf. Johnson v. United States, 559 U.S. 133, 140-42 (2010) (holding that a violent felony under the ACCA necessarily involves the use of "violent force").

## III.

For the foregoing reasons, we conclude that sufficient evidence supported Royal's conviction and that the district court did not err in its jury instructions. However, in light of Descamps, the district court's application of the modified categorical approach to support Royal's ACCA sentencing

enhancement was in error.  Accordingly, we affirm Royal's conviction, vacate his sentence, and remand for resentencing.[2]

AFFIRMED IN PART,
VACATED IN PART,
AND REMANDED

---

[2] We deny Royal's motion for leave to file a supplemental brief.