GREGORY, Circuit Judge,
dissenting:
This case presents the question of whether a court should treat a state offense as divisible when the relevant state law is itself ambiguous and/or inconsistently applied. North Carolina’s common law crime of assault is one such offense. See United States v. Kelly, 917 F.Supp.2d 553, 556-59 (W.D.N.C.2013) (conducting a detailed review of North Carolina common law and describing it as a “quagmire of alternative definitions for assault on a female”). In the face of that uncertainty, it would be prudent to err on the side of constitutional caution, construing state law in a way that minimizes the lurking Sixth Amendment danger of imposing a sentence based on a fact that need not be found beyond a reasonable doubt. See Apprendi v. New Jersey, 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). Yet the majority chooses to rely on tenuous suppositions, inapposite jury instructions, and the decision of a state intermediate appellate court (at odds with the state supreme court) to hold that assault is a divisible offense in North Carolina. Still moré problematic, the majority proceeds to assert that courts need not look to state law at all and may instead rely solely on the factual allegations of a charging document to determine divisibility in these circumstances. Such circular logic is plainly at odds with the analytical approach required by the Supreme Court and consistently used by this Court.
More broadly speaking, the majority’s view disregards the Supreme Court’s teaching that the modified categorical approach should only apply to a “narrow range of cases,” such as where a single burglary statute includes the effectively separate crimes of entry of an automobile and building. Descamps v. United States, — U.S. -, 133 S.Ct. 2276, 2284, 186 L.Ed.2d 438 (2013) (observing that, in such circumstances, “the prosecutor charges one of those two alternatives, and the judge instructs the jury accordingly”). And by divining divisibility in the face of uncertainty, the majority also disregards how courts typically construe ambiguity in criminal offenses, where the resolution of the ambiguity has clear constitutional implications. Cf. Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Constr. Trades Council, 485 U.S. 568, 575, 108 S.Ct. 1392, 99 L.Ed.2d 645 (1988) (“[Wjhere an otherwise acceptable construction of a statute would raise serious constitutional problems, the Court will construe the statute to avoid such problems unless such construction is plainly contrary to the intent of Congress.”). Under the rule of lenity, for *432 instance, “any criminal statute, including a sentencing provision, must be construed in favor of the accused and against the government if it is ambiguous.” See United States v. Hall, 972 F.2d 67, 69 (4th Cir. 1992) (citing Bifulco v. United States, 447 U.S. 381, 387, 100 S.Ct. 2247, 65 L.Ed.2d 205 (1980)); see also United States v. Santos, 553 U.S. 507, 514, 128 S.Ct. 2020, 170 L.Ed.2d 912 (2008) (“The rule of lenity requires ambiguous criminal laws to be interpreted in favor of the defendants subjected to them.”); Kelly, 917 F.Supp.2d at 561 (invoking the rule of lenity in deciding whether the crime of assault in North Carolina is categorically a misdemeanor crime of domestic violence under federal law). The majority charts a different course, and I therefore respectfully dissent.
I.
As the majority opinion recognizes, the modified categorical approach is appropriate only where alternative formulations of a statutory or common law offense constitute functionally distinct crimes. In those limited cases, the alternative element that matches a generic federal offense (here, the predicate offense of a “misdemeanor crime of domestic violence”) will necessarily be charged and instructed separately. We can then be confident that a defendant was actually convicted of a crime that matched the federal offense, in keeping with Sixth Amendment safeguards.[1] When an offense is indivisible, on the other hand, a jury need not agree that an individual committed the specific alternative that matches the federal crime. Instead, a jury may simply conclude that a defendant engaged in one of several proscribed courses of conduct (some of which match the federal offense while others do not), without saying which occurred. See Omargharib v. Holder, 775 F.3d 192, 199 (4th Cir.2014) (noting that a statute is indivisible when a jury need not unanimously agree that a defendant engaged in conduct that matched a federal generic offense).
Regarding the North Carolina crime of assault on a female, the majority acknowledges that no controlling state precedent establishes whether different types of assault must be treated as alternative elements that are charged and instructed separately. Maj. Op. at 424-25. Indeed, the only elements of the crime of “assault on a female” that the Supreme Court of North Carolina has enumerated are “(1) an assault, (2) upon a female person, (3) by a male person (4) who is at least eighteen years old.” State v. Herring, 322 N.C. 733, 370 S.E.2d 363, 370 (1988). Nonetheless, the majority concludes that the common law offense of assault is itself divisible, reasoning in part that the way the law looks “suggests” divisibility. Maj. Op. at 425. Under the majority’s view, North Carolina common law cleanly carves an assault offense into three functionally distinct crimes: 1) an “attempted-battery” assault; 2) a “completed-battery” assault; and 3) a “show of violence” assault.
Yet even on that superficial level, courts have recognized that the definition of assault under North Carolina common law is far from straightforward. See Kelly, 917 F.Supp.2d at 556-57, 559 (noting some of the challenges in applying the various, and sometimes inconsistent, formulations of assault articulated by North Carolina courts); see also State v. Daniel, 136 N.C. 571, 48 S.E. 544, 545 (1904) (“While the law relating to this crime would seem to be simple and of easy application, we are *433 often perplexed in our attempt to discriminate between what is and what is not an assault.”).
Most generally, North Carolina courts have stated that there are two ways to commit an assault, both of which encompass conduct that falls outside the federal definition of a “misdemeanor crime of domestic violence.” First, under what the majority terms an “attempted-battery” assault, courts have recognized that the “traditional common law definition of criminal assault is an overt act or attempt, or the unequivocal appearance of an attempt, with force and violence, to do some immediate physical injury to the person of another, which show of force or menace of violence must be sufficient to put a person of reasonable firmness in fear of immediate bodily harm.” See State v. McDaniel, 111 N.C.App. 888, 433 S.E.2d 795, 797 (1993) (citing State v. Roberts, 270 N.C. 655, 155 S.E.2d 303, 305 (1967)). This definition is broader than the federal domestic violence predicate offense because it criminalizes the “unequivocal appearance of an attempt” whereas the federal crime only includes “the use or attempted use of physical force.” 18 U.S.C. § 921(a)(33)(A); see also United States v. Vinson, No. 5:13— CR-121-FL, 2013 WL 6843013, at *6 (E.D.N.C. Dec. 27, 2013) (observing that “[t]his court is not convinced that the ‘unequivocal appearance of an attempt’ in the state law offense rises to the level of an attempt, as required by the federal offense”). Attempt is a specific intent crime, requiring that the “defendant consciously intends the completion of the acts comprising the choate offense.” 21 Am.Jur.2d Criminal Law § 155 (2015). But an “unequivocal appearance' of an attempt” appears to require no such actual intent. See State v. Barksdale, 181 N.C.App. 302, 638 S.E.2d 579, 582 (2007) (finding that a defendant’s conduct qualified as an “unequivocal appearance of an attempt” even if it did not rise to the level of an attempt under state law).
Second, the North Carolina high court has recognized that an assault may also be committed through a “show of violence accompanied by reasonable apprehension of immediate bodily harm or injury on the part of the person assailed which causes him to engage in a course of conduct which he would not otherwise have followed.” Roberts, 155 S.E.2d at 305. The majority and the government agree that this definition is also broader than the federal predicate offense because it does not require any use or attempted use of physical force whatsoever.
In addition to the two primary definitions of assault, North Carolina courts have provided a variety of others. For instance, in State v. West, the North Carolina Court of Appeals defined assault as “an intentional attempt, by violence, to do injury to the person of another.” 146 N.C.App. 741, 554 S.E.2d 837, 840 (2001). And in State v. Hefner, the Supreme Court of North Carolina provided that “[a]n ‘assault’ is an offer or attempt by force or violence to do injury to the person of another.” 199 N.C. 778, 155 S.E. 879, 879 (1930).
A battery, meanwhile, has been defined by the state courts as “an assault whereby any force, however slight[,] is actually applied to the person of another directly or indirectly.” State v. Sudderth, 184 N.C. 753, 114 S.E. 828, 829 (1922); see also State v. Britt, 270 N.C. 416, 154 S.E.2d 519, 520-21 (1967); West, 554 S.E.2d at 840. Thus, “[a] battery always includes an assault.” Britt, 154 S.E.2d at 521; Hefner, 155 S.E. at 880.
In that light, must a court instruct a completed battery separately, or may it rely on the traditional common law definitions of assault in at least some cases *434 where a battery is involved? May a court instruct a jury on both assault-without-battery and completed-battery assault and let the jury convict under either theory? May it instruct the attempted-battery formulation as a lesser included offense for completed battery? The answers to those questions are not forthcoming from definitions alone. Indeed, even where a state criminal statute has listed two ways to commit an offense in the alternative (which the North Carolina statute at issue does not), we have found the “use of the word ‘or’ in the definition of a crime does not automatically render the crime divisible.” Omargharib, 775 F.3d at 198. Still more on point, this Court in United States v. Royal determined that a Maryland assault statute was indivisible even though a definition of assault was framed in the disjunctive. 731 F.3d 333, 341 (4th Cir.2013). This was true because “Maryland juries are not instructed that they must agree ‘unanimously and beyond a reasonable doubt’ on whether the defendant caused [either] ‘offensive physical contact’ or ‘physical harm’ to the victim; rather, it is enough that each juror agree only that one of the two occurred, without settling on which.” Id.
What matters is thus not how an offense is defined in isolation, but instead how it is treated by state courts in practice. In that context, it is not enough to show that the different ways of committing an offense are sometimes charged and instructed separately at the discretion of a court, or even more often than not charged and instructed separately. Instead, the different forms of an offense must be charged and instructed separately under state law if they are to be considered alternative elements such that the modified categorical approach is permissible. See United States v. Beltran-Munguia, 489 F.3d 1042, 1045 (9th Cir.2007) (“To constitute an element of a crime, the particular factor in question needs to be a constituent part of the offense [that] must be proved by the prosecution in every case to sustain a conviction under a given statute.” (internal quotation marks and emphasis omitted, alteration in original)); see also Omargharib, 775 F.3d at 198 (“Elements, as distinguished from means, are factual circumstances of the offense the jury must find unanimously and beyond a reasonable doubt.” (internal quotation marks omitted)).
II.
Looking to how North Carolina courts treat the crime of assault in practice, the majority understandably turns to the state’s pattern jury instructions. See Omargharib, 775 F.3d at 199 (examining Virginia model jury instructions to determine whether a state statute was divisible); Royal, 731 F.3d at 341 (looking to Maryland jury instructions for evidence of divisibility). At the time of Vinson’s conviction, the only pattern instruction for “assault on a female” was 208.70, which allowed a jury to convict based upon a finding that a defendant engaged in any of a number of alternative types of conduct, some of which did not involve the use or attempted use of physical force. The instruction stated:
The defendant, a male person, has been charged with assault on a female. (An assault is an overt act or an attempt, or the unequivocal appearance of an attempt, with force and violence, to do some immediate physical injury to the person of another, which show of force or menace of violence must be sufficient to put a person of reasonable firmness in fear of immediate bodily harm.)
For you to find the defendant guilty of this offense, the State must prove three things beyond a reasonable doubt:
*435 First, that the defendant intentionally (and without justification or excuse) assaulted the victim by (describe assault). Second, that the victim was a female person.
And Third, that the defendant was a male person, at least eighteen years of age.
N.C.P.I. Crim. 208.70 (2002). Like North Carolina common law itself, the instruction is not a model of lucidity. But the instruction, if given fully with the parenthetical definition of assault, plainly allows a jury to convict even if the defendant did not use or attempt to use physical force. A jury could instead find that a defendant engaged in an “unequivocal appearance of an attempt,” and the instruction also appears to sanction a finding of guilt based on a “menace of violence” — a standard that can be interpreted as consistent with the “show of violence” definition of assault previously discussed.
Of course, North Carolina courts are not required to follow the pattern instructions, see, e.g., State v. Garcell, 363 N.C. 10, 678 S.E.2d 618, 642-43 (2009), and courts could have formulated completed-battery-specific instructions at the time of Vinson’s conviction. Indeed, some of the cases cited by the majority suggest that courts created such instructions. But the model instructions nonetheless remain strong evidence of the 'default practice of courts. They are also consistent with the district court’s belief here that it was possible for a North Carolina jury to convict an individual of assault based on either a theory of assault-without-battery or assault-with-battery, without having to specify which version occurred. Vinson, 2013 WL 6843013, at *7. As the district court concluded, “[tjhere is no requirement that the factfinder must determine which of the [types of assault] occurred in order to convict for the crime of assault on a female.” Id.; see also Royal, 731 F.3d at 341 (drawing a similar conclusion regarding the Maryland offense of assault).
The determination that North Carolina courts are not required to use a single formulation of assault in their jury instructions finds substantial additional support in state case law. For instance, in State v. Carpenter, 155 N.C.App. 35, 573 S.E.2d 668 (2002), a defendant was charged with assault on a female by “hitting [the victim] with his hands.” Id. at 674-75. The trial court originally gave a battery-based instruction, asking the jury to determine whether “the defendant intentionally assaulted the victim by hitting her with his hands and feet.” Id. at 674. But when the jury then asked for the “Definition of Assault,” the court provided the model definition stated above, instructing that:
An assault is ... an overt act or an attempt or the unequivocal appearance of an attempt with force and violence to do some immediate physical injury to the person of another which show of force or menace of violence must be sufficient to put a person of reasonable firmness in fear of immediate bodily harm.
Id. Reviewing the trial court’s instruction, the Court of Appeals of North Carolina found no plain error, even though the indictment did not mention “attempt.” Id. The appellate court reasoned that “[t]he trial court is not required to frame its instructions with any greater particularity than is necessary to enable the jury to understand and apply the law to the evidence bearing upon the elements of the crime charged.” Id. at 674-75.
Similarly, in State v. Garrison, 225 N.C.App. 170, 736 S.E.2d 610 (2013), a North Carolina defendant was indicted for battery-based assaults that resulted in physical injuries like “a broken rib and a broken nose, cheekbone, and ruptured *436 eardrum.” Id. at 612. When the trial court instructed the jury on two counts of assault on a female, it used a version of the attempted-battery instruction, instead of a completed-battery instruction. The instruction stated:
[T]he defendant, a male person, has been charged with assault on a female on April 9th, 2010. An assault is an overt act or an attempt to do some immediate physical injury to the person of another.
For you to find the defendant guilty of this offense, the State must prove three things beyond a reasonable doubt.
First, that the defendant intentionally assaulted the alleged victim.
Second, that the alleged victim was a female person.
And, third, that the defendant was a male person at least eighteen years of age.

Id.

And in a case cited by the majority, State v. Lineberger, 115 N.C.App. 687, 446 S.E.2d 375 (1994), the North Carolina Court of Appeals went so far as to find reversible error when a trial court failed to provide the jury with a version of the traditional common law definition of assault (including both attempted-battery assault and show-of-violence assault) in a case that involved an alleged completed battery of an off-duty police officer. Id. at 378-79. In Lineberger, the trial court originally instructed the jury to find the defendant guilty if it found the following beyond a reasonable doubt:
First, that the defendant assaulted M.C. Hurley by intentionally and without justification or excuse, striking or bumping against him with his shoulder.
Second, that M.C. Hurley was a law enforcement officer and the defendant knew or had reasonable grounds to know that Hurley was a law enforcement officer.
And, third, that when the defendant struck or bumped against Hurley, Hurley was attempting to discharge a duty of his office, to it, ejecting the defendant from the premises in question.
Id. at 377. The Court of Appeals held that the instruction was deficient because it failed to define assault. Id. at 379. As for what definition should have been used, the court turned to the common law’s understanding of assault as “an overt act or attempt, or the unequivocal appearance of an attempt, with force and violence, to do some immediate physical injury to the person of another, which show of force or menace of violence must be sufficient to put a person of reasonable firmness in fear of immediate bodily harm.” Id. at 378-79 (internal quotation marks and citation omitted); see also State v. Hickman, 21 N.C.App. 421, 204 S.E.2d 718, 719 (1974) (finding error when a trial court’s instructions described the alleged conduct but failed to define assault).
Cases like Carpenter, Garrison, and Lineberger directly belie the majority’s assertion that “a single definition of assault typically is given [in state assault cases], and that definition often is nothing more than a description of the charged conduct.” Maj. Op. at 427. At the very least, the cases show the lack of consistency and precision in how North Carolina courts actually instruct juries on the charge of assault, even where an indictment alleges an underlying battery. The cases thus reveal the danger in circumstances where a charging document may describe what looks like a completed battery (necessarily involving the use of physical force), but the actual jury instructions later include lañ-guage regarding the “unequivocal appearance of an attempt” or a “show of violence.” Furthermore, North Carolina law *437 regarding fatal variances between indictments and instructions appears to allow a court to include an instruction for an attempted-battery assault as a lesser included offense where the indictment alleges a completed-battery. See N.C. Gen.Stat. § 15-170 (“Upon the trial of any indictment the prisoner may be convicted of the crime charged therein or of a less degree of the same crime, or of an attempt to commit the crime so charged, or of an attempt to commit a less degree of the same crime.”); State v. Squires, 357 N.C. 529, 591 S.E.2d 837, 841 (2003) (“The elements of attempt are an intent to commit the substantive offense and an overt act which goes beyond mere preparation but falls short of the completed offense.”).
Given the inconsistency and haziness in North Carolina jury instructions regarding assault, the instructions do little to establish divisibility. Indeed, one way of interpreting the addition of the more recent battery-based instruction the majority cites is as an attempt to bring needed clarity to a previously uncertain area of state law. This Court, however, is limited to the law as it existed at the time of Vinson’s conviction.
III.
For further evidence of whether the crime of assault is divisible, the majority also prudently looks to whether the assault alternatives are charged separately. Finding no decision in the history of the Supreme Court of North Carolina to support the proposition that they must be so charged, the majority relies on the holding of the intermediate state appellate court in State v. Garcia, which concluded that an arrest warrant for simple assault must specify the type of assault charged, at least where a “show of violence” assault is alleged. 146 N.C.App. 745, 553 S.E.2d 914, 915 (2001).
The rather considerable problem with relying on Garcia, however, is that the decision directly conflicts with the precedent of the Supreme Court of North Carolina. See United States v. Hemingway, 734 F.3d 323, 333 (4th Cir.2013) (“[A] federal court is ‘bound by the [state supreme court’s] interpretation of state law, including its determination of the elements of the potential predicate offense.”) (quoting Johnson v. United States, 559 U.S. 133, 138, 130 S.Ct. 1265, 176 L.Ed.2d 1 (2010) (alterations in original)). In State v. Thome, the high court unambiguously held that an indictment for simple assault need not specify the type of assault alleged. 238 N.C. 392, 78 S.E.2d 140 (1953). As the court stated:
To be sure, the allegation that the defendant (Evella Thorne) unlawfully, willfully violated the laws of North Carolina by assault on one Harvey Thomas is sufficient to charge a simple assault. This is so because it charges that offense with such a degree of certainty and in such a manner as to enable a person of common understanding to . comprehend the charge, and the court to pronounce judgment on the conviction according to the law of the case, and the accused to plead an acquittal or conviction on it in bar of another prosecution for the same offense.
78 S.E.2d at 141-^42 (internal quotation marks and alterations omitted); see also Strong’s North Carolina Index 4th, Assault and Battery § 54 (citing Thome for the proposition that “[a] warrant charging that the defendant on a certain day in a named city did unlawfully and willfully violate the laws of North Carolina by an assault on a named person is sufficient to charge the offense of a simple assault”). Thome thus makes plain the state supreme court’s belief that the different formulations of assault are not different ele *438 ments that must be charged separately. Instead, they are merely means to satisfy the single, indivisible, element of assault. See also State v. Jeffries, 57 N.C.App. 416, 291 S.E.2d 859, 860-61 (1982) (“Assault is a requisite element of assault on a female.”).
Notably, Thome was decided before North Carolina enacted the Criminal Procedure Act, which requires that a criminal pleading contain “[a] plain and concise factual statement in each count which, without allegations of an evidentiary nature, asserts facts supporting every element of a criminal offense and the defendant’s commission thereof' with sufficient precision clearly to apprise the defendant or defendants of the conduct which is the subject of the accusation.” N.C. Gen.Stat. § 15A-924(a)(5). Such a standard, however, is similar to what was in place at the time of Thome. Pre-existing precedent required that an indictment go beyond the language of a statute when the statute did not plainly set forth the essential elements of an offense. In those cases, “the statutory words must [have been] supplemented in the indictment by other allegations which explicitly and accurately set forth every essential element of the offense with such exactitude as to leave no doubt in the minds of the accused and the court as to the specific offense intended to be charged.” State v. Greer, 238 N.C. 325, 77 S.E.2d 917, 920 (1953).[2] Under that standard, Thorne established that the allegation that one individual assaulted another is sufficient, without the inclusion of any other essential elements, to support a charge of simple assault in North Carolina.
It is thus curious that Garcia fails to even mention Thorne. The omission is still more peculiar given the fact that Garcia itself uses language that mirrors the language used in cases from before the Criminal Procedural Act. As Garcia observed:
Generally, a warrant which substantially follows “the words of the statute is sufficient [as a criminal pleading] when it charges the essentials of the offense in a plain, intelligible, and explicit manner”. If the statutory language, however, “fails to set forth the essentials of the offense, then the statutory language must be supplemented by other allegations which plainly, intelligibly, and explicitly set forth every essential element of the offense as to leave no doubt in the mind of the defendant and the court as to the offense intended to be charged.”
553 S.E.2d at 915 (internal citations omitted, alterations in original). Similarly, the Supreme Court of North Carolina has continued to invoke pre-Criminal Procedure Act precedent in describing what is required in a charging document. See State v. Jones, 367 N.C. 299, 758 S.E.2d 345, 351 (2014) (citing State v. Cook, 272 N.C. 728, 158 S.E.2d 820, 822 (1968)). As if that were not enough, a leading encyclopedia on North Carolina law continues to cite Thome as establishing that “[a] warrant *439 charging that the defendant on a certain day in a named city did unlawfully and willfully violate the laws of North Carolina by an assault on a named person is sufficient to charge the offense of a simple assault.” Strong’s North Carolina Index 4th, Assault and Battery § 54.
Thus, the majority’s reliance on Garcia as establishing divisibility is misplaced. Instead, Garcia at most shows the unsettled nature of the question.
IV.
The majority opinion not only relies on equivocal state law. Surprisingly, it goes a dramatic step further and reasons that a court need not look to- state law at all in these circumstances and instead may turn directly to the description of alleged conduct in a charging document to establish divisibility. Such a standard turns Des-camps and this Court’s recent precedent on their respective heads.
As Descamps made plain, the modified categorical approach is not an exception to the categorical approach’s fundamental imperative that courts may only look to the statutory elements of an offense, and not the specific facts underlying a conviction, to determine whether a conviction can count as a predicate offense. Descamps, 133 S.Ct. at 2283-84. This analytical framework is critical to preserve Sixth Amendment safeguards that protect against sending a person to jail, or lengthening his or her sentence, based on a fact that a factfinder need not necessarily find beyond a reasonable doubt. See Shepard v. United States, 544 U.S. 13, 24-25, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005).
The majority, however, reasons in this ease that the factual statement of alleged conduct in the Magistrate’s Order “establishes that the various formulations of assault are alternate elements or definitions of the offense, which in turn establishes that the offense of assault on a female is divisible.” Maj. Op. at 430-31. That simply cannot be. The Magistrate’s Order does two things. First, it lists the offense that Vinson allegedly, committed — N.C. Gen.Stat. § 14-33(c)(2). As previously discussed, nothing in the text of the statute itself suggests that assault is a divisible offense. Second, the order describes Vinson’s alleged conduct to support the charge that an assault was committed. Nowhere, however, does the Order specify that Vinson was charged with a completed-battery variant of assault, to the exclusion of other types of assault. In essence, the majority’s logic boils down to this: Because a charging document describes conduct consistent with a battery, a completed-battery assault must be a separate element of an assault offense in North Carolina such that it is necessarily charged and instructed separately. Of course, that approach is backwards. Under Descamps, we must first look to state law to determine if an offense is divisible before then turning to documents of conviction to see if an individual was prosecuted under the alternative element that matches the federal definition.
To support its novel approach, the majority opinion relies on a footnote in Des-camps suggesting that courts may consult the documents of conviction to determine divisibility when a statute lists alternative versions of a crime in the disjunctive and the documents thus also necessarily specify which version of the crime was charged, instructed, and/or pled to. See Descamps, 133 S.Ct. at 2285 n. 2. To take the example used by the Supreme Court elsewhere in Descamps, we can imagine a burglary statute that prohibits unlawful entry of both cars and buildings. Id. at 2284. In that ease, the statute presents alternative versions of a crime in the disjunctive and the *440 documents of conviction will necessarily specify whether an individual has, in fact, been charged with the burglary of a car or building. Without looking any further, a court can be confident that the burglary offense is divisible.
But the relatively clear-cut situation anticipated by the footnote in Descamps is a very far cry from the instant circumstances, where the statute itself lists nothing in the alternative and a court must thus necessarily delve into state common law to determine if an offense is divisible in the first place. It stretches reason to try to understand how, in these circumstances, a court could discern divisibility by looking to nothing more than the description of alleged conduct in a Magistrate’s Order. Indeed, this Court’s post-Descamps cases have consistently looked to state law to determine if an offense is divisible before examining any documents of conviction. See United States v. Hemingway, 734 F.3d 323, 333-34 (4th Cir.2013) (looking to South Carolina state law to determine whether a common law crime of assault and battery was divisible); Omargharib, 775 F.3d at 198-99 (finding the modified categorical approach inapplicable after conducting a detailed survey of Virginia state law and concluding that the statute at issue was not divisible, even though it listed ways to commit a crime in the disjunctive); Royal, 731 F.3d at 341 (turning to state law to determine whether the Maryland offense of assault was divisible and concluding that it was not).
Given the unsupported novelty of the majority’s approach, and the uncertainty it creates for future cases, I can only hope that the full Court will grant rehearing to provide needed clarity and consistency.
V.
In sum, I cannot agree with the majority’s conclusion that the state crime of assault encompasses functionally separate alternative offenses such that the modified categorical approach is permissible.
I respectfully dissent.

. In the plea context specifically, limiting the use of the modified categorical approach to divisible offenses ensures that a plea "was to the version of the crime” that corresponds to the federal generic offense. Descamps, 133 S.Ct. at 2284.

. In State v. Worsley, 336 N.C. 268, 443 S.E.2d 68, 73-74 (1994), the Supreme Court of North Carolina overruled a specific subset of cases decided before the Criminal Procedure Act. The cases concerned the specific issue of whether an "indictment for burglary must specify the particular felony which the defendant is alleged to have intended to commit at the time of breaking and entering.” Id. at 73. The court concluded that the Criminal Procedure Act had actually relaxed the common law pleading requirement and found that prior cases "are no longer controlling on this issue.” Id. (emphasis added). Indeed, the court observed that the "pleading requirements of the Criminal Procedure Act are more liberal” than the common law rules. Id. (internal quotation marks omitted). In that light, Worsley does not overrule Thome's conclusion that an indictment for simple assault need not list any further elements of the crime.